THE STATE OF OHIO, APPELLEE, *v.* SENEFF, APPELLANT.

(No. 41927—Decided October 30, 1980.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee. *Gold, Rotatori, Messerman & Schwartz Co., L.P.A.,* and *Mr. Gerald S. Gold,* for appellant.

JACKSON, P. J.   The defendant-appellant, Richard Seneff, was indicted for and convicted of bribery for soliciting and accepting valuable consideration to influence him with respect to the discharge of his duty as a Cleveland police officer. He

asserts on appeal that the trial court's instructions to the jury were erroneous.

*First Assignment of Error:*

"Upon evidence which raised a factual dispute concerning an essential element of R. C. §2921.02(B) (bribery), whether a police officer-defendant is engaged in the discharge of his duties when pursuing a certain activity during off-duty hours, the trial court usurped the fact-finding function, denied appellant the right to trial by jury, and relieved the state of the burden of proving guilt beyond a reasonable doubt by explicitly directing the jury to find against appellant on the issue raised."

The offense of bribery is set forth in R. C. 2921.02. The appellant was charged with and convicted of violating subsection (B) of that statute, which provides:

"No person, either before or after he is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, shall knowingly solicit or accept any valuable thing or valuable benefit to corrupt or influence him with respect to the discharge of his duty."

The undisputed evidence shows that, during October 1978, the appellant recovered a stolen automobile and returned it to the owner. The appellant freely admitted that before returning the automobile he solicited and received a payment of $1,000 from the owner. The appellant also admitted that he did not file a police report regarding his recovery of the automobile. The appellant's sole defense to the charge of bribery was that he was "off-duty" at the time he recovered the automobile, and solicited and received the payment. He argued before the trial court that the $1,000 did not constitute compensation for the discharge of his official duty, but was merely compensation for his personal, off-duty activities.

The appellant argues on appeal that the trial court in effect directed a verdict as to one essential element of the case, namely, that the appellant had an official duty to return the automobile to its owner. The jury instruction of the trial court which is the subject of controversy follows:

"You will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness or belief that the 1976 Porsche automobile was

stolen, that he, the Defendant was a police officer thus a public servant and that he was soliciting a valuable thing, namely money compensation in order to influence him in the discharge of his duty as a police officer; that is to return the automobile to its owner, or cause the automobile to be returned to its owner."

We are persuaded that the instruction of the trial court does no more than specify the official duty that the appellant, as a police officer, was accused of performing for compensation.[1] It is a matter beyond dispute that one of the official duties of the police is to cause the return of stolen property to the rightful owner. By statute, police officers of a municipal corporation are obligated to "protect property" and to "perform such other duties as are provided by ordinance":

"The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority thereof, and all criminal laws of the state and the United States. * * * Both the police and fire departments shall perform such other duties as are provided by ordinance. * * * " R. C. 737.11.[2]

The city of Cleveland has prescribed by ordinance that the police shall locate and notify the owners of recovered stolen

---

[1] Defense counsel apparently gave the court's instruction at trial the same interpretation that we do on appeal. The appellant did not object to this instruction on the ground that it directed the jury to find adversely to the appellant on the existence of the appellant's duty to return the car; the objection was, rather, that the charge to the jury was more specific than the indictment by identifying the official duty that was allegedly breached. Specifically, defense counsel stated:

"Mr. Gold: I also object to the Court's charge on bribery as to the offense in regard to the duty, the indictment recites duty. It never has been the granting of any bill of particulars and the Court sets forth what the duty was. That is to return a car. I think that goes beyond the scope of the indictment, and beyond the scope of the charge. That's my objection."

[2] On March 27, 1979, following the factual events of the case at bar, the following amended version of R. C. 737.11 became effective:

"The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States, and all court orders issued and consent agreements approved pursuant to sections 2919.26 and 3113.31 of the Revised Code. The fire department shall protect the lives and property of the people in case of fire. Both the police and fire departments shall perform any other duties that are provided by ordinance. The police and fire departments in every city shall be maintained under the civil service system." See 137 Ohio Laws 3526-3527.

property as to when and where their property may be reclaimed:

*"Disposition of Property Held by the Division of Police.*

"(a) Property which has been lost, abandoned, stolen or lawfully seized or forfeited, and which is in the custody of the Division of Police, shall be safely kept pending the time it is no longer needed as evidence, and disposed of pursuant to this section.

"(b) The Division shall make a reasonable effort to locate the persons entitled to possession of property in its custody, and to notify them when and where it may be claimed. In the absence of evidence identifying persons entitled to custody, it is sufficient notice to advertise in a newspaper of general circulation in the County, briefly describing the nature of the property in custody and inviting persons to view and establish their right to it." Section 601.14 of the Codified Ordinances of Cleveland.[3]

The appellant asserts that he was not obligated to perform his official duty to cause the return of stolen property while he was off-duty. That issue, however, is not before this court. The appellant was not charged with or punished for failing to return stolen property which he discovered while off-duty; he was found guilty of soliciting and receiving valuable consideration for performing a duty which was his responsibility to perform as a police officer.

We have been unable to discover any Ohio cases involving criminal prosecutions for similar conduct. The Ohio Supreme Court has ruled, however, that a police officer is not eligible to collect a reward for making an arrest or retrieving stolen property. *Gilmore* v. *Lewis* (1843), 12 Ohio 281; *Somerset Bank* v. *Edmund* (1907), 76 Ohio St. 396. In both cases municipal constables sought to claim a reward offered by private citizens. In *Somerset Bank* v. *Edmund,* the court expressly rejected the plaintiff's argument that he was entitled to the reward because he effected the arrest as a private citizen and not in his capacity as constable:

"1. Public policy and sound morals alike forbid that a public officer should demand or receive for services performed by him in the discharge of official duty, any other or further

---

[3] Although subsection (f) of the ordinance exempts motor vehicles "from the operation of this section," the standard for police conduct is still relevant.

remuneration or reward than that prescribed and allowed by law.

"2. The office of constable is not an office created for the private emolument of the holder. Every constable is a conservator of the peace, and it is his duty, within his jurisdiction, 'to apprehend and bring to justice all felons and disturbers and violators of the criminal laws of the state,' without other reward or compensation therefor than such as is fixed and allowed by law.

"3. A constable who, within his jurisdiction, arrests a person who has committed a felony, will, in making the arrest, be presumed and held to act in his official capacity, whether such arrest be made by him under, or without a warrant. And the law will not permit him to claim that an arrest made, pursuant to official duty, was made by him in his individual capacity as a private citizen." *Id.*, syllabus.

In *Gilmore* v. *Lewis, supra,* the court indicated that a police officer who solicits extra compensation to perform his duties is guilty of extortion:

" * * * As a civil duty, every individual is bound to use reasonable exertion to effect the punishment of crime; but the law imposes no such obligation on the private citizen, unless called upon for assistance, by its ministerial officers; and an offered reward is, frequently, the only hope of remuneration for a meritorious service rendered to the commonwealth.

"But public officers, on whom the law casts this duty, from whom it requires exertion, and to whom it affords adequate compensation, occupy different ground.

"*It is an indictable offense, in them, to exact and receive any thing, but what the law allows, for the performance of their legal duties.* A promise to pay them extra compensation is absolutely void, under the statute of Ohio. Such promise could not be enforced at common law, being against sound policy, and, *quasi,* extortion. * * * " (Emphasis added.) *Id.,* at 285-286.

Judge Wasserman of this court, while sitting by assignment on the Ohio Supreme Court, expounded upon this principle in a case involving a county officer who obtained reimbursement for travel expenses based on automobile mileage for himself and for county officers and employees that he carried as passengers on county business:

"Even if appellee had not filed for travel money himself when he carried other officials, he could not have accepted payment from more than one passenger because a public official cannot use his position for private profit. It is a well-worn, but no less true, statement of public policy that a public office is a public trust and a public official is a fiduciary. *Crane Twp., ex rel. Stalter,* v. *Secoy,* 103 Ohio St. 258. It would be a violation of this duty to the citizens of the state for an official to use his public office for private gain. (See Section 325.02, Revised Code.) Although attendance at the meetings was not a required function of appellee's job, it became an official aspect once appellee decided to go, and, like the constable who cannot collect a reward for successfully solving a criminal case (*Somerset Bank* v. *Edmund,* 76 Ohio St. 396), appellee cannot accept additional remuneration for this performance. While appellee was not employed by the county as a carrier, the opportunity to transport other officeholders came to him because of his public position. Appellee's only choice here is whether or not to extend hospitality to would-be traveling companions. He is free to carry or not carry as he chooses, but he cannot utilize this occasion for private enrichment. *Halliday* v. *Norfolk & Western Ry. Co.,* 44 Ohio Laws Abs. 208." *State* v. *McKelvey* (1967), 12 Ohio St. 2d 92, 95 (civil case in which the official was ordered to repay the misappropriated funds).

We find that the public official in the case at bar, like the one in *State* v. *McKelvey,* is not free to utilize his official duties as an occasion for private enrichment. To hold otherwise would be to sanction the sale of police protection by individual police officers to members of the public. This would discourage police officers from apprehending criminals and recovering stolen property in their official capacity, and would encourage them to perform these functions as private citizens. The public policy of this state forbids such a result. We hold that, as a matter of law, one of the official duties of Cleveland police officers is to cause the return of stolen property to the lawful owner. The instruction to the jury by the trial court on this issue was not erroneous. This assignment of error is overruled.

*Second Assignment of Error:*

"By charging the jury that it was required to convict if it was firmly convinced of the truth of the charge, the court

relieved the state of the burden of proving guilt beyond a reasonable doubt and required that guilt be established only by clear and convincing evidence."

The appellant points out that in instructing the jury on the definition of "beyond a reasonable doubt" the trial court enlarged upon the statutory definition. R. C. 2901.05 provides, in part, as follows:

"(B) As part of its charge to the jury in a criminal case, the court shall read the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt,' contained in division (D) of this section.

" * * *

"(D) 'Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."

The appellant objects to the emphasized portion of the court's instruction to the jury, reproduced below:

"Reasonable doubt is present when the Jurors after they have carefully considered and compared all the evidence, can not say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense.

"Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt.

"Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

"In case of reasonable doubt, whether the guilt of a Defendant has been proven beyond a reasonable doubt by the State, the Defendant shall be acquitted. *If after a full and impartial consideration of all the evidence, you are firmly convinced of the truth of the charge, the State has proven its case beyond a reasonable doubt.*

"If you are not firmly convinced of the truth of the charge,

you must find the Defendant not guilty." (Emphasis added.)

The record discloses that the appellant objected to the charge of the court, not on the ground that the court had amplified the statutory definition, but on the ground that the standard enunciated by the trial court was "unconstitutional." Nonetheless, we choose to address this issue on the merits because of the serious reservations this court has about *any* material addition to or deviation from the statutory definition of reasonable doubt.

We are persuaded that *any* addition to the statutory definition of reasonable doubt is inadvisable.[4] The legislature mandated that the statutory definition be read to the jury. We find no reason for a trial court to add to or modify this definition in its instruction to the jury. The definition is simple and complete. The obvious intent of the legislature in enacting R. C. 2901.05(B) was to eliminate needless reversals of criminal convictions on account of erroneous and *ad hoc* definitions of reasonable doubt by trial courts.

Not every expansion upon the definitions contained in R. C. 2901.05(D) is, however, prejudicial error. An amplification to the definition of reasonable doubt is prejudicial only where it is an "incorrect statement of the law" or it is "likely to confuse the jury." *State* v. *Sargent* (1975), 41 Ohio St. 2d 85, 91, 92. A jury instruction which is "substantially in accordance" with the statutory definition is not prejudicial error. *Beck* v. *State* (1935), 129 Ohio St. 582.

We find that the trial court's jury instruction regarding reasonable doubt is substantially in accordance with the mandatory definition contained in R. C. 2901.05(D). The import of the statute is that the jury shall convict if it is "firmly convinced" of the defendant's guilt; the court's instruction merely stated this proposition in the positive form rather than as a double negative. The instruction of the court, if error, was harmless.

The appellant argues, in the alternative, that if R. C. 2901.05(D) is interpreted as providing that a jury shall vote to convict if it is "firmly convinced" of the charge, then the

---

[4] In *State* v. *Sargent* (1975), 41 Ohio St. 2d 85, 90, the Ohio Supreme Court adopted the following statement of the law:

" ' * * * [T]he court, in going beyond the statutory definition, must use extreme care not to prejudice either party. * * * ' "

statute is unconstitutional. Appellant correctly notes that " * * * the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship* (1970), 397 U. S. 358, 364. The appellant contends that to be "firmly convinced" is less than to be "convinced beyond a reasonable doubt."[5]

In the long train of Ohio jurisprudence there appear many formulations of the degree of proof necessary for conviction in a criminal case. One of the earliest of these was by Judge Birchard of the Ohio Supreme Court:

"What is a reasonable doubt?

"A verdict of guilty can never be returned without convincing evidence. The law is too humane to demand a conviction while a rational doubt remains in the minds of a jury. You will be justified, and are required to consider a reasonable doubt as existing, if the material facts, without which guilt can not be established, may fairly be reconciled with innocence. In human affairs absolute certainty is not always attainable. From the nature of things reasonable certainty is all that can be attained on many subjects. When a full and candid consideration of the evidence produces a conviction of guilt, and satisfies the mind to a *reasonable certainty,* a mere captious or ingenious artificial doubt is of no avail. You will look, then, to all the evidence, and if that satisfies you of the defendants's [*sic*] guilt, you must say so. If you are not *fully satisfied,* but find only that there are strong probabilities of guilt, your only safe course is to acquit." (Emphasis added.) *Clark* v. *State* (1843), 12 Ohio 483, 495.

Forty-eight years later the Ohio Supreme Court approved Judge Birchard's model jury instruction, and approved as well the "moral certainty" test from Massachusetts:

" * * * Perhaps no more satisfactory definition is to be

---

[5] There is a strong similarity between the present definition of proof beyond a reasonable doubt and the definition of clear and convincing proof enunciated by the Ohio Supreme Court two decades before the enactment of R. C. 2901.05:

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross* v. *Ledford* (1954), 161 Ohio St. 469, paragraph three of the syllabus.

found than that given by Chief Justice SHAW, in the *Webster Case* [*Commonwealth* v. *Webster* (1850), 59 Mass. (5 Cush.) 295, 320]: 'It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.' The definition given by BIRCHARD, J., in *Clark* v. *The State*, 12 Ohio, 483, is also well established as a safe one, and its sufficiency is not impaired by its age. It is safe to follow established precedents." *Morgan* v. *State* (1891), 48 Ohio St. 371, 377.

The moral certainty test was enacted into law by the Ohio legislature in 1929 (See G. C. 13442-3, 113 Ohio Laws 123, 179), and remained substantially unchanged until 1974, when R. C. 2901.05(D) became effective in its present form.

The United States Supreme Court has also passed upon the sufficiency of various definitions of the term "proof beyond a reasonable doubt." In one case the court upheld a jury instruction which defined "proof beyond a reasonable doubt" as "an abiding conviction of the defendant's guilt." See *Hopt* v. *Utah* (1887), 120 U. S. 430, 439-441.

We find that the term "firmly convinced" is a concise and easily understood synonym of the concept "proof beyond a reasonable doubt." It is clear, but not less demanding of the state, than the requirement of proof to a "moral certainty."[6]

The word "firm" is defined in Webster's Third New International Dictionary (1971 Ed.), at 856, as follows:

" * * * **1a:** securely or solidly fixed in place * * * **b(1):** not weak * * * or uncertain: * * * [vigorous] **c:** having a solid or compact structure * * * [which resists] stress or pressure* * * **2a(1):** not subject to change * * * [or] revision * * *: * * * [set,] DEFINITE * * * **(2):** not subject to price weakness * * *: STEADY * * * **b(1):** not easily moved * * * or disturbed: * * * **(2)** * * * STEADFAST * * * **c** * * * **(2):** WELL-FOUNDED * * * **3:** indicating firmness or resolution * * * [.]"

The synonyms of "firm"—vigorous, set, definite, steady,

---

[6] We are aware of the decision by the Court of Appeals for the Second Appellate District of Ohio, in which the court states that the "fully convinced" standard is a lesser degree of proof than the "moral certainty" standard. *State* v. *Crenshaw* (1977), 51 Ohio App. 2d 63. That court did not rule on the constitutionality of the new standard. As noted in the text, *supra,* we find the standards to be equivalent and constitutional.

steadfast, and well-founded—taken together aptly describe that state of mind required for conviction of a criminal defendant. The "firmly convinced" test is similar to the definitions of reasonable doubt set forth in *Clark* v. *State* (1843), 12 Ohio 483, and *Hopt* v. *Utah* (1887), 120 U. S. 430. The second assignment of error is not well taken.

*Third Assignment of Error:*
"By defining 'reasonable doubt' and 'proof beyond a reasonable doubt' as those terms are defined in R. C. §2901.05(A) [*sic*], the court relieved the state of the burden of proving guilt beyond a reasonable doubt in violation of the Due Process Clause of the Fourteenth Amendment."

Both this court and the Ohio Supreme Court have expressly upheld the constitutionality of the definition of the term "beyond a reasonable doubt" contained in R. C. 2901.05(D). *State* v. *Nabozny* (1978), 54 Ohio St. 2d 195, vacated on other grounds (1978), 439 U. S. 811; *State* v. *Berry* (Cuyahoga Co. Ct. of Appeals No. 37703, October 12, 1978), unreported; *State* v. *Workman* (Cuyahoga Co. Ct. of Appeals No. 39211, November 24, 1978), unreported. In our discussion to the appellant's second assignment of error we upheld the statutory definition of "reasonable doubt." The third assignment of error is not well taken.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

DAY and PARRINO, JJ., concur.

DAY, J., concurring. I concur in the judgment but add a few words to emphasize a point of controversy which could have been avoided.

The trial court expanded unnecessarily on the statutory definition of "reasonable doubt". The expansion was worse than needless. It laid the groundwork for an additional assignment of error. Moreover, it is my view, unlike that of the majority, that the "firmly convinced" addendum came perilously close to misstating the appropriate quantum of proof.

All of this could have been avoided by no expansion at all. This would have certainly constituted the " ' * * * extreme care not to prejudice either party * * * ' " advocated by the Supreme Court in *State* v. *Sargent* (1975), 41 Ohio St. 2d 85, 90.