THE STATE OF OHIO, APPELLEE,
*v.* MAHONEY, APPELLANT.

(No. C-850373—Decided
July 30, 1986.)

*Arthur M. Ney, Jr.,* prosecuting
attorney, *Christian J. Schaefer* and *R.
Thomas Moorhead,* for appellee.

*Timothy A. Smith,* for appellant.

SHANNON, P.J. This appeal derives
from the judgment entered and sen-
tence imposed pursuant to the verdict
of a jury finding the defendant-appel-
lant, Martin Mahoney, guilty of two
counts of aggravated vehicular homi-
cide, with specifications, as he stood
charged in an indictment.

The two fatalities occurred as the
result of a head-on collision, which was
the last in a series of events that began
during the early evening hours of No-
vember 21, 1984.

At about 6:20 p.m. on that date,
Mahoney, then twenty years of age,
met one Reichart. Together, they
went, in Mahoney's automobile, first to
a bowling alley where each had some
beer to drink and then to another es-
tablishment where Mahoney drank
more beer and Reichart consumed a
number of mixed drinks. Mahoney
then drove back to the bowling alley
where they learned that a party was
being held in the near vicinity. With
Reichart giving directions, Mahoney
drove to the gathering, at which three
high-school students, Steven Heile,
James P. Anderson and Michael Over-
berg, were among those in attendance.

After a short time, Reichart and
Mahoney went to purchase a case of
beer to replenish the supply at the par-
ty. In the course of the return trip,
Mahoney found himself behind an
automobile being driven by a young
woman, Jenny Reilly, who was on her
way home. According to her testi-
mony, she was experiencing difficulty
with the car's mechanism which
caused it to hesitate before accel-
erating. Mahoney's pace was slowed as
a result of the sluggish speed of
Reilly's car.

As the two vehicles descended a
grade in the undulating roadway,
Mahoney's patience was exhausted
and he decided to pass Reilly's vehicle
despite the fact that such maneuver re-
quired him to drive to the left of the
center of the road, clearly marked with
double yellow lines. Mahoney passed.
But, when his car was some one and
one-half to two car lengths ahead of
Reilly's car, her accelerator functioned
and her speed increased. At that mo-
ment, Mahoney's car was approaching
the crest of the rise of the hill opposite
the downgrade and was still to the left
of the double yellow lines.

Shortly before this time, Anderson
and Overberg had left the party in
Heile's car, with Heile driving. As
Mahoney approached the crest of the
hill, Heile was driving on the right side
of the center lines on the opposite
grade. The two vehicles met, head-on,
just as Heile came over the crest and as
Mahoney "floored" his accelerator to
complete his passing of Reilly.

Anderson and Overberg were so
severely injured that death resulted in
the hospital to which they were re-
moved. Reichart and Mahoney also
suffered extensive injuries, and Heile's
injuries were such that he was un-

conscious for a week and unable to recall any of the events of the evening after he had left the party.

On November 29, 1984, the Hamilton County Grand Jury returned an indictment charging Mahoney with two counts of aggravated vehicular homicide and one count of driving while under the influence of alcohol or drugs. On December 7, 1984, Mahoney entered pleas of not guilty to those charges and, through counsel, sought discovery and a bill of particulars.

On April 25, 1985, the grand jury returned a second indictment differing from the first only in that it added specifications alleging physical harm to the charges set forth originally. On April 29, 1985, Mahoney entered pleas of not guilty to the new indictment.

Trial commenced on May 6, 1985 and concluded on May 10, 1985, with the verdicts finding Mahoney guilty of the homicides, as specified, but not guilty of having committed the offenses while under the influence of alcohol or drugs.

On May 24, 1985, the court conducted a hearing and found that Mahoney had a prior conviction for driving under the influence of alcohol as specified in the indictment, and sentenced Mahoney to consecutive terms of three to five years on each count. Further, the court ordered the suspension of Mahoney's license to operate a motor vehicle for five years, providing expressly that the suspension was to commence upon Mahoney's release from confinement.

On May 28, 1985, at the request of the prosecution, the court dismissed the first indictment.

Appellant gives us twelve assignments of error, some of which are interrelated and the first of which is that:

"The trial court committed prejudicial error by violating the individual assignment system set forth in Rule 7 of the Hamilton County Rules of the Court of Common Pleas."

Appellant contends that although the first indictment was properly assigned by lot to the jurist who presided over the trial, that jurist had no authority to assume, automatically, responsibility for the disposition of the second indictment.

Local Rule 7(B) of the Court of Common Pleas of Hamilton County (originally effective March 1976) provides, in part:

"In accordance with Superintendence Rule 4, upon the filing in, or transfer to, a division of the Court of a civil case, or upon arraignment upon information or indictment in a criminal case, such case shall be immediately assigned by the Presiding Judge or the Court Administrator by lot to a judge thereof, who thus becomes primarily responsible for the determination of every issue and proceeding in the case until its termination. * * *"

The only difference in the two indictments in this case is that the first did not contain the specifications set forth in the second; the crime charged remained unchanged.

In *State* v. *Porter* (1976), 49 Ohio App. 2d 227, 230, 3 O.O. 3d 276, 278, 360 N.E. 2d 759, 761, the Court of Appeals for Summit County held that the Rules of Superintendence are guidelines for judges only and cannot be used by criminal defendants as a ground for discharge, citing its prior holding in *State* v. *Duncan* (Oct. 22, 1975), Medina App. No. 581, unreported.

We adopted this rule in deciding *State* v. *Carroll* (Dec. 13, 1978), Hamilton App. No. C-780185, unreported, in which we held that the Rules of Superintendence are administrative directives only, and are not intended to function as rules of practice and procedure. See, also, *State* v. *Smith* (1976), 47 Ohio App. 2d 317, 327, 1

O.O. 3d 385, 391, 354 N.E. 2d 699, 706-707; *State* v. *Siegel* (June 16, 1982), Hamilton App. Nos. C-810600 and -810601, unreported.

We see no reason to abandon these precedents in this case, especially because it was apparent from the beginning that the first indictment was properly assigned for disposition and, after the second indictment was returned, was to be dismissed. Mahoney was not prejudiced by the procedure adopted and, therefore, cannot prevail upon his first assignment of error. Resultantly, the assignment is overruled.

The second assignment of error is:

"The trial court committed prejudicial error in refusing to order the prosecution to provide a proper bill of particulars."

Appellant argues that in order to prepare his defense it was necessary that he be told by the state what specific act or acts committed by him would be relied upon to prove reckless conduct. His assignment of error is bottomed upon the assertion that because the bill of particulars provided in response to his timely made request gave him nothing more than the statutory definition of recklessness, the court erred in failing to require the state to specify the reckless conduct. He contends, further, that because he had undoubtedly crossed the double yellow lines and had remained to the left thereof for a considerable distance, the lack of specificity in the bill of particulars forced his counsel to concede in his opening statement to the jury that the appellant had been "criminally negligent."

It is clear that Mahoney was advised fully of the course of conduct exhibited by the manner in which he had operated his automobile at the time critical in this case, *viz.,* that he crossed the double yellow lines under circumstances in which he could not pass Reilly's car safely, that he failed, inexplicably, to complete the passing maneuver when Reilly's car was moving slowly enough for him to have done so, and that when Reilly's vehicle accelerated, he failed to abandon his attempt to pass her and to return to the right of the yellow lines. He concedes that reasonable minds could conclude that each of the separate acts exhibited by his operation of his car was a reckless act, but insists that he has a right to know of which act he has been convicted.

The Supreme Court has set forth, clearly and succinctly, the office to be served by a bill of particulars. The first paragraph of the syllabus of *State* v. *Chaffin* (1972), 30 Ohio St. 2d 13, 59 O.O. 2d 51, 282 N.E. 2d 46, states:

"The purpose of a bill of particulars is to set forth specifically the nature of the offense charged, not to require the state to disclose its evidence." See, also, *State* v. *Gingell* (1982), 7 Ohio App. 3d 364, 7 OBR 464, 455 N.E. 2d 1066.

R.C. 2901.22(C) provides the definition which the Ohio General Assembly has chosen to give to the terms "recklessly" and "reckless":

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

R.C. 2901.22(E) provides, *inter alia,* that "[w]hen recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element."

From these provisions, it follows that it is the mental state of the actor,

his knowledge and comprehension of his conduct, derived by the triers of the facts from the evidence in its totality, which is the determinative factor in the proof of an allegation of recklessness.

Here, Mahoney's specific conduct was the series of acts, the decisions or lack of decisions, involved in the operation of his vehicle on the wrong side of the highway culminating in the head-on collision which killed James Anderson and Michael Overberg. It was the duty of the jury to determine Mahoney's mental state while then acting and, ultimately, to conclude whether or not there was sufficient culpability for the element of recklessness.

Tested by these standards, we find that the bill of particulars was sufficient and that the court did not err in refusing to direct the state to provide an amplification of it by detailing evidence.

Accordingly, the second assignment of error is overruled.

The third assignment is:

"The trial court committed prejudicial error, in admitting on behalf of the State, evidence of prior convictions for drunk driving against a witness called by [the] State."

One of the witnesses called by the state in presenting its case-in-chief was Reichart, the passenger in Mahoney's car. Upon direct examination of the witness, it was demonstrated that he, Reichart, had been convicted of driving under the influence of alcohol after the date of the fatal accident in this case. Appellee concedes in its brief that this was a ploy on its part performed to frustrate impeachment of Reichart's testimony by the defense on the basis of that conviction. Further, the prosecution admits that it was an improper procedure but denies that, under the circumstances, it provided a basis upon which to find prejudicial error.

Because Evid. R. 607 permits any party to attack the credibility of a witness, we need consider only the method by which the impeachment was attempted and whether the judgment of the jury was swayed, substantially, by the error. Accordingly, we have applied the tests given by Evid. R. 103(A), Crim. R. 52(A) and Crim. R. 33(E), all of which mandate in one form or another that no judgment shall be reversed, or verdict set aside, because of error which does not result in prejudice to an appellant.

We find no prejudice to Mahoney in this instance, especially in light of the fact that the jury found him not guilty of the charge of operating his motor vehicle while intoxicated, and his third assignment is overruled because the asserted error is harmless.

The fourth and fifth assignments are so closely related that they will be treated together.

The fourth assignment is:

"The trial court committed prejudicial error by refusing to answer a relevant question of law submitted by the jury during deliberation."

The fifth assignment is:

"The trial court committed prejudicial error by refusing to give a requested jury instruction on the definition of recklessness prior to the inception of deliberations."

The appellant requested that the court include within its instructions to the jury this charge:

"In order to establish [recklessness,] the conduct must be supported by evidence that shows a disposition to perversity, such as acts of stubbornness, obstinacy or persistency in opposing that which is right, reasonable, correct or generally accepted as a course to follow in protecting the safety of others.

"Such perversity on the part of the [defendant] must be found to be under such circumstances and existing conditions that the party doing the act, or

failing to act, must be conscious from his knowledge of such surrounding circumstances and existing conditions that his conduct will, in all common probability, result in injury. * * *" *Roszman* v. *Sammett* (1971), 26 Ohio St. 2d 94, 97, 55 O.O. 2d 165, 166, 269 N.E. 2d 420, 422-423.

Prior to the tender of the requested charge, the court had supplied counsel with its written instructions. The requested charge was rejected with the observation by the court that its written charges "adequately covered the matters [raised in the] proposed jury instructions."

The instructions given to the jury reflected, precisely, R.C. 2901.22 in its pertinent parts:

"In Count 1, the defendant is charged with 'aggravated vehicular homicide.'

"Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 21st day of November, 1984, and in Hamilton County, Ohio, the defendant, while operating a motor vehicle, recklessly caused the death of James P. Anderson.

"A person 'acts recklessly' when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or be of a certain nature.

"A person is 'reckless' with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

Appellant attempts to buttress his contention that the court's charge should have been amplified by his requested instruction by embroidering upon the thesis advanced by his fifth assignment the argument underpinning the fourth assignment, *viz.*, that the jury did not comprehend the meaning of the phrase "perversely disregard."

After having deliberated the case for a number of hours, the jury submitted this question to the court:

"What is the legal definition of [']perversely disregard[']?"

The court responded:

"[Y]ou have received all the material in the Court's legal instructions necessary for you to arrive at your verdicts in this case."

The generally accepted rule is that special instructions which correctly state the law pertinent to the case must be included, at least in substance, in the general charge. *Cincinnati* v. *Epperson* (1969), 20 Ohio St. 2d 59, 49 O.O. 2d 342, 253 N.E. 2d 785, paragraph one of the syllabus.

Comparison of what was requested with what was given reveals that, in part, they coincide. However, in larger part the requested instruction enlarges upon, embellishes and details the statutory provisions upon which the general charge was couched. Resultantly, the court's charge cannot be challenged in the part which subsumed the requested instruction because it states the law correctly. In those parts in which the appellant's version of the law expands upon R.C. 2901.22, the court below was correct in its rejection.

The basic, and salutary, rule is that amplification of statutory definitions is inadvisable, is likely to introduce error, and is to be done, if at all, only with extreme care not to prejudice either party to a criminal case. *State* v. *Seneff* (1980), 70 Ohio App. 2d 171, 24 O.O. 3d 215, 435 N.E. 2d 680. See, also, *State* v. *Sargent* (1975), 41 Ohio St. 2d 85, 70 O.O. 2d 169, 322 N.E. 2d 634.

Turning to the issue raised by the fourth assignment, *viz.*, that the jury could not fathom the meaning of the phrase "perversely disregards" as employed in R.C. 2901.22(C), we find

that the coupling of those words by the legislature has not produced a result unclear to persons of reasonable intelligence. The adjective "perverse" and the adverb "perversely" are not words so arcane, so unusual or used so rarely in written or verbal exchanges as to be beyond the comprehension of ordinary citizens. Consequently, the court was under no duty to provide, specially, a definition of the terms.

Moreover, the question addressed by the jury sought not a dictionary definition but a legal definition, and the court had already given the jury the exact provisions of the pertinent statute.

We find no abuse of discretion by the court in refusing to include the requested instruction or to provide an instruction by way of answer to the jury's question defining a statutory term and, resultantly, the fourth and fifth assignments of error are overruled.

The sixth assignment is that the court erred by admitting an oral statement not revealed during discovery.

In presenting its case-in-chief, the state called to the stand a deputy sheriff who had visited the hospital to which Mahoney had been taken after the accident, for the purpose of obtaining from Mahoney a blood sample to be analyzed for its content of alcohol. Mahoney was conscious, although painfully injured, when the officer confronted him with a request to submit the sample. According to the officer, Mahoney first agreed to have a sample of blood withdrawn by a nurse but, when Mahoney saw the hypodermic needle in the nurse's hand, he began "screaming at the top of his lungs * * * and said, 'I will not let you take it.'" The officer then abandoned his purpose and left the hospital.

Appellant contends that the court erred in permitting the witness to relate, over objection, appellant's refusal to submit to a blood-alcohol test.

At the time the objection was made, the prosecutor maintained that he had advised Mahoney's trial counsel of the refusal during the course of the informal pretrial discovery process. Defense counsel, however, denied knowledge of Mahoney's statement prior to the moment when it became apparent that the officer, on the witness stand, was about to relate what Mahoney had said at the hospital. It was at this juncture that the court indicated it would provide the opportunity to defense counsel to conduct an investigation into the circumstances under which any statement may have been made, and assured counsel that the witness would be subject to recall. No further objections appear in the record, and the witness was not summoned again to testify.

Assuming, arguendo, that there was a violation of the rules of discovery, we find that the assignment of error is not well-taken upon the authority of State v. Parson (1983), 6 Ohio St. 3d 442, 6 OBR 485, 453 N.E. 2d 689, the syllabus of which is:

"Where, in a criminal trial, the prosecution fails to comply with Crim. R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim. R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim. R. 16(E)(3) by permitting such evidence to be admitted."

The seventh assignment is predicated upon the assertion that the finding of guilty is based on insufficient

evidence. We will consider it to raise, as well, the issue whether the verdict of the jury is against the manifest weight of the evidence.

When the assignment is considered as one which questions the *sufficiency* of the evidence, pursuant to Crim. R. 29(A), it is not well-taken on the authority of *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184:

"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* syllabus.

Considered as one questioning the *weight* of the evidence, it is not well-taken on the authority of *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *Id.* syllabus.

Appellant submits in his brief that his original decision to overtake Reilly was "made out of understandable impatience rather than perversity" and concludes that because Reilly's acceleration placed him "in an unforeseeable predicament," the evidence is insufficient to prove a violation of R.C. 2903.06 (aggravated vehicular homicide).

Mahoney's impatience is demonstrated most clearly by his own testimony. He said:

"Well, I said, 'This is ridiculous. Something is going to happen. I better go;' you know. So I practically floored it, which I only got up to, at the time, about 40, you know. I wasn't going very fast to go around her, because she started off slow in the first place. And I finally did see her headlights in my mirror."

Later, this exchange was had between Mahoney and the prosecutor:

"Q. And did you see the double yellow line when you passed?

"A. Yes.

"Q. And you didn't care about that, you went ahead and passed to the left; you went across that double yellow line?

"A. I had more caution because of the double yellow line.

"Q. So you were concerned about that double yellow. You knew about that double yellow line when you went around Jenny Reilly's car?

"A. I didn't see anything else I could do. I couldn't sit behind her and wait all the time. I followed her long enough as it was.

"Q. And at that point, you decided that, 'Regardless of the double yellow line, I am going to go around her,' isn't that correct?

"A. Yes."

The essential facts in this case were not, genuinely, in dispute. The issue, fundamentally and ultimately, was whether Mahoney acted recklessly. We are convinced that the jury was equipped to decide that issue, and did not lose its way in the process of finding Mahoney guilty. We are equally certain that the court did not err in permitting the case to go to the jury for that decision. Impatience, no matter how "understandable," cannot be held to justify taking the terrifying risk of driving on the wrong side of a two-lane highway so as to approach, blindly, the crest of a hill, or to excuse a resultant collision which takes two lives.

The eighth assignment of error is that the court erred in everruling an objection to the state's argument to the jury.

In his closing argument, the prose-

cutor alluded, in general terms, to cases of reckless and drunken driving, and to the loss of lives suffered as a result of such operation of automobiles. He added:

"Society it [*sic*] interested in this case, is interested in the outcome of these cases, becsuse [*sic*] it is getting to the point —"

Immediately, defense counsel objected and the court said to the jury:

"Same instruction, ladies and gentlemen of the jury, as I previously gave to you. What counsel says to you is not evidence, but they do have the right to make reasonable inferences based upon what the evidence is."

We have examined the isolated remarks of the prosecutor in the light of the tenor of his arguments as a whole, bearing in mind the general rule that both sides in a criminal case enjoy a wide latitude in summing up their cases. Our conclusion is that the comments do not constitute a demand for a conviction to satisfy public clamor nor do they voice a threat to the jury that they would condone reckless or drunken driving by an acquittal.

The court's limiting instruction, added to the general admonitions earlier given and included in the charge respecting the purpose of argument by counsel, was sufficient to nullify any possible prejudicial effect of the prosecutor's remarks.

Resultantly, the eighth assignment is without merit.

Passing, for the moment, the ninth assignment, we address ourselves to the tenth and eleventh assignments.

Together, they question the order of the court suspending Mahoney's license to drive a motor vehicle, both in the length of time set and in the time at which the suspension is to become effective.

The court ordered a suspension for a term of five years and, further, that it is to begin after the period of Mahoney's incarceration in prison ends.

The eleventh assignment is a remonstration that the court erred in imposing a five-year suspension because of the three-year limitation set forth in R.C. 4507.16 applicable to the case *sub judice* in view of the acquittal of the charge of driving while intoxicated.

We cannot agree.

In *State* v. *Jones* (1985), 18 Ohio St. 3d 116, 18 OBR 148, 480 N.E. 2d 408, the Supreme Court held that an individual may be convicted of a separate violation of aggravated vehicular homicide for each person killed as a result of a single instance of that individual's reckless operation of his motor vehicle.

*Cincinnati* v. *Ryan* (1968), 13 Ohio St. 2d 83, 42 O.O. 2d 261, 234 N.E. 2d 596, stands for the proposition that an operator's license may be suspended for separate traffic offenses originating from a single course of operation.

Resultantly, we hold that where, as here, a motorist has been convicted of separate counts of aggravated vehicular homicide, the license to operate a motor vehicle held by such motorist may be suspended on each count, respectively.

R.C. 4507.16 provides, *inter alia,* for a maximum period of suspension for conviction of a charge of aggravated vehicular homicide of three years. Since Mahoney stood convicted of two such counts, his driver's license could have been suspended for six years, *i.e.,* a year more than the period ordered.

The tenth assignment protests that the court erred in ordering that the five-year period in which Mahoney is to be barred from driving upon public highways is to begin when he is released from confinement.

Again, we cannot agree.

R.C. 4507.16 provides, explicitly, that any suspension of an operator's license shall be in addition to or in-

dependent of all other penalties provided by law.

We hold that the proviso authorizes a sentencing judge to order the suspension to become effective at a time later than the date of any sentence of incarceration or imposition of any fine or other form of punishment.

To us, it is clear that to order Mahoney not to drive a motor vehicle upon the highways while he is in prison, where he will not be driving upon the streets and thoroughfares in any event, would be, in effect, not to order any suspension, surely a ludicrous result in this case.

For the reasons given, the tenth and eleventh assignments are meritless and are overruled.

The twelfth assignment is:

"The trial court committed prejudicial error by refusing the defense request for rebuttal of arguments made by the prosecution for the first time in the closing portion of closing argument."

Any decision to vary the order of proceedings as established in R.C. 2945.10 is within the sound discretion of the trial court. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, paragraph eleven of the syllabus. Abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 253, 15 OBR 379, 391, 473 N.E. 2d 768, 782.

We find no abuse of discretion manifested by the record and, accordingly, this assignment is overruled.

In conclusion, we will dispose of the ninth assignment of error. It is given in this form:

"The trial court committed prejudicial error in ruling that the defendant was ineligible for probation, shock probation, and shock parole."

In specification three to each count, the indictment alleges:

"The Grand Jurors further find and specify that the said Martin L. Mahoney at the time of the offense had previously been convicted of driving under the influence, in violation of Section 4511.19 of the Ohio Revised Code, on February 1, 1984."

The court provided in its judgment entry journalized May 24, 1985, that Mahoney, having been found guilty of specification three as to the first and second counts of the indictment, shall not be eligible for shock probation or shock parole, pursuant to R.C. 2903.06(C).

The state adduced evidence to prove a violation of a section of the Ordinances of North Bend, Ohio, a political subdivision within Hamilton County. It is argued here that the section is the functional equivalent of R.C. 4511.19 and, therefore, that the terms of R.C. 2903.06(C) provide the basis for the court's declaration of Mahoney's ineligibility for shock probation or shock parole.

We are not required in this case to rule upon the merits of the state's contention because the plain fact is that the grand jury chose to specify a prior conviction of R.C. 4511.19. Thus, it cannot be said that the body which returned the charges and the specifications meant to say that Mahoney had a prior conviction for a violation of Section 506-1 of the Ordinances of North Bend, even if it is assumed that such section proscribes driving while intoxicated.

The assignment of error is welltaken because the state failed to prove the truth of the third specification to counts one and two, and the order of the court predicated on the proof of a prior conviction of R.C. 4511.19 is void as a result of that failure.

The judgment of the Hamilton County Court of Common Pleas is af-

firmed in all particulars except that in which it ordered and decreed that the appellant herein, Martin Mahoney, shall not be eligible for shock probation or shock parole pursuant to R.C. 2903.06(C). This cause is, therefore, remanded to the Hamilton County Court of Common Pleas only for modification of the said judgment entry of May 24, 1985, by eliminating from it the provision of ineligibility for shock parole or shock probation on the ground of a prior conviction for a violation of R.C. 4511.19, consistent with this decision.

*Judgment accordingly.*

BLACK and HILDEBRANDT, JJ., concur.