## SELINGER ET AL. *v.* GOVERNOR OF MARYLAND ET AL.

[No. 100 (Adv.), September Term, 1972.]

*Per Curiam Order June 30, 1972.*

*Opinion Filed July 20, 1972.*

## PER CURIAM ORDER

For reasons to be stated in an opinion to be filed later, it is this 30th day of June, 1972

ORDERED by the Court of Appeals of Maryland that the order of the Circuit Court for Anne Arundel County dated May 18, 1972 be, and it is hereby, affirmed with costs to be paid by the appellants; and it is further

ORDERED that the mandate be issued forthwith.

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Elizabeth M. Eckhardt* for appellants.

*Francis X. Pugh, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

On 30 June 1972, we entered a per curiam order, affirming an order of the Circuit Court for Anne Arundel County, which had denied the petitioners' bill for declaratory and injunctive relief. We shall now state our reasons.

On 8 April 1971, the General Assembly enacted House Bills Nos. 860 and 861, the Bills,[1] which, in substance, provided that under certain circumstances costs of school construction would thereafter be funded by the State.

---

1. Chs. 625 and 624, respectively, of the Laws of 1971. Ch. 624 is codified as Code (1957, 1969 Repl. Vol.) Art. 77, § 130A, and amends §§ 124 (a), 124 (b) and 130 (b) of Art. 77; Ch. 625 authorized the creation of State debt in the amount of $150,000,000.00.

Norman Selinger and two fellow residents of Montgomery County, the complainants below and appellants here, endeavored to have both Bills brought to referendum.

In their effort, they were caught in some constitutional interstices, from which they sought to be rescued below. Maryland Constitution, Art. XVI, § 1 (a) provides:

> "The people reserve to themselves power known as The Referendum, by petition to have submitted to the registered voters of the State, to approve or reject at the polls, any Act, or part of any Act of the General Assembly, if approved by the Governor, or, if passed by the General Assembly over the veto of the Governor;"

Constitution, Art. XVI, §§ 2 and 3 continue, in pertinent part:

> § 2 "No law enacted by the General Assembly shall take effect until the first day of June next after the session at which it may be passed. . . . If before said first day of June there shall have been filed with the Secretary of the State a petition to refer to a vote of the people any law or part of a law capable of referendum, as in this Article provided, the same shall be referred by the Secretary of State to such vote, and shall not become a law or take effect until thirty days after its approval by a majority of the electors voting thereon at the next ensuing election held throughout the State for Members of the House of Representatives of the United States."

> § 3 (a) "The referendum petition against an Act or part of an Act passed by the General Assembly, shall be sufficient if signed by three per centum of the qualified voters of the State of Maryland, calculated upon the whole number of votes cast therein for Governor at the last

preceding Gubernatorial election, of whom not more than half shall be residents of Baltimore City, or of any one County. . . ." [2]

Then follows § 3 (b) :

"If more than one-half [i.e., 15,000], but less than the full number of signatures required to complete any [referendum] petition against any law passed by the General Assembly, be filed with Secretary of State before the first day of June, the time for the law to take effect, and for filing the remainder of signatures to complete the petition shall be extended to the thirtieth day of the same month, with like effect."

What happened here was this. House Bills 860 and 861 were introduced at the 1971 Session of the General Assembly on 5 March 1971 as measures sponsored by the administration. They were passed by the House of Delegates on 27 March 1971, and by the Senate on 8 April 1971. The General Assembly adjourned on 13 April 1971. The Bills were presented to the Governor, and signed by him on 24 May 1971.

The appellants contend that they consulted knowledgeable people in the legislative branch, and were advised that the petitions designed to take a bill to referendum could not be signed until the Governor approved the bill.[3] The appellants would, but cannot, weave an estoppel from these gossamer strands, *see C. E. Weaver v. Comptroller*, 235 Md. 15, 22-23, 200 A. 2d 53 (1964) ; *Comptroller v. Atlas Industries*, 234 Md. 77, 84-87, 198 A. 2d 86 (1964).

The Governor signed the Bills on 24 May, and in consequence of the intervention of a holiday weekend, the appellants were confronted with the virtually impossible

---

2. It seems to be conceded that 30,000 signatures would have been required.

3. There was testimony that the appellants had consulted seven lawyers, each of whom told them "something different."

task of obtaining 15,000 signatures within a period of only several days. They made no effort to do this, apparently forgetting the warning in *Tyler v. Secretary of State,* 229 Md. 397, 402, 184 A. 2d 101 (1962), that "those seeking to exercise the right of referendum in this State must . . . strictly comply with the conditions prescribed." Instead, they turned to the court, seeking a declaration that the enactment of the Bills was unconstitutional by reason of the fact that when the Governor signed the Bills on 24 May, there was an automatic denial of the 30 day period for the collection of signatures before 1 June, which in their view is guaranteed by Constitution, Art. XVI, §§ 2 and 3.

The appellants ground their contention on the idea that until a "bill" is signed by the Governor, it does not become an "Act" within the purview of Constitution, Art. XVI, § 1 (a). We do not see it quite that way.

The annual regular sessions of the General Assembly commence on the second Wednesday of January, Constitution, Art. III, § 14, and ordinarily continue for 90 consecutive days, § 15. The session may last, depending on the vagaries of the calendar, until a date somewhere in mid-April. Bills enacted by the General Assembly must be presented to the Governor for signature or veto as soon as practical after passage, in compliance with Maryland Code (1957, 1971 Repl. Vol.) Art. 41, § 45, which provides, "every bill . . . shall, as soon thereafter as practical, be . . . presented to the Governor for his approval. . . ." Our predecessors have held this phrase to be "of a relative and dependent character, to be controlled more or less by the circumstances of the case, and by no means [to] furnish a definite and fixed rule," *Robey v. Broersma,* 181 Md. 325, 341, 26 A. 2d 820, 29 A. 2d 827 (1942, *modified on reargument,* 1943), quoting from *Lankford v. Somerset Co.,* 73 Md. 105, 20 A. 1017, 22 A. 412 (1890). "Practicable" has been held to mean not practicable for the officials of the Legislature but practicable from the standpoint of proper consideration by the Governor, *Robey v. Broersma, supra,* 181 Md. at 341;

*Johnson v. Luers,* 129 Md. 521, 526-527, 99 A. 710 (1916). That the Governor must act on bills not later than 31 May may possibly be inferred from the constitutional requirement that referenda petitions must be filed before 1 June, 54 Op. Att'y Gen. 184, 188 (1969), 21 Op. Att'y Gen. 277, 280-281 (1936).

Within this framework, to argue, as the appellants do, that petitions intended to take a bill to referendum cannot be circulated until a "bill" has become an "Act," by virtue of the Governor's signature is simply unrealistic, and flies in the face of the doctrine that effect will be given, wherever possible, to every part of a constitution or statute, *Thomas v. Police Commissioner,* 211 Md. 357, 127 A. 2d 625 (1956). The acceptance of the appellants' argument, in the context of the time limitations which we have discussed, would effectively negate the constitutional guaranty of the right of referendum, which we regard as inalienable.

As we see it, petitions designed to take a bill to referendum may be circulated for signature at any time after a bill has been enacted by the General Assembly, without awaiting the Governor's signature, even though such petitions have never in the past been filed with the Secretary of State until after the Governor has signed a bill. To hold otherwise might well result in a nullification of the referendum process.

The appellants argue that abuses of the Governor's power to control the date when a bill is presented for his signature could conceivably frustrate the constitutionally guaranteed right of referendum. They suggest, by way of example, that if a bill is not signed by the Governor until 11:59 p.m. on 31 May, the opportunity to file a referendum petition might be effectively foreclosed. But this overlooks the possibility that a referendum petition might be filed with the Secretary of State before the Governor affixes his signature.

An excerpt from Judge Bryan's concurring opinion in *Lankford v. Somerset Co., supra,* 73 Md. at 121-122 is apposite here:

"It may be answered that all public officers are bound to perform their duties with promptness and diligence. An unreasonable delay in the discharge of duty is grave misconduct in a public officer. It would be unbecoming in the court to anticipate that the executive department would neglect its duty. If unhappily, such an event shall ever occur, we must deal with the case as law and justice may require. But we are not called upon to lay down in advance a rule to meet this contingency. It is possible that we may some day be obliged to declare a law invalid because of the Governor's delay in signing it. But that day has not yet arrived."

The appellants say, and we agree, that if petitions are circulated and signatures obtained before the adjournment of the General Assembly, a last minute amendment may well require the whole effort to be undertaken anew because Constitution, Art. XVI, § 4 requires that each petition "contain the full text of the Act or part of Act petitioned upon. . . ." [4] Similarly, the whole effort could become a futile exercise if the Governor should veto the bill when it is presented for his signature.

A better solution might be found if the constitutional provision could be modified to provide that one-half of the required signatures be filed within 30 days from the date when the Governor signs a bill, the other one-half to be filed within the 30 days [5] next following. Such a mechanism may be properly structured by the General Assembly and by popular vote. It cannot be effected by judicial construction, *Abell v. Secretary of State,* 251 Md. 319, 331, 247 A. 2d 258 (1968).

For these reasons, we believe that the relief sought by the appellants was properly denied.

---

4. The State acknowledges that since a bill is not assigned a chapter number until signed by the Governor, petitions circulated before a bill is presented for signature usually make provision for the insertion of a chapter number prior to filing with the Secretary of State.

5. Of course, the effective date of the act would have to be accommodated to this procedure.