STATE OF MARYLAND *v.* FICKER A/K/A ROBIN KEITH ANNESLEY FICKER

[No. 74, September Term, 1972.]

\* \* \*

MONTGOMERY COUNTY, MARYLAND *v.* FICKER A/K/A ROBIN KEITH ANNESLEY FICKER

[No. 99, September Term, 1972.]

*Decided October 12, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Peter I. J. Davis, Assistant State's Attorney for Montgomery County,* and *Gary Melick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Andrew L. Sonner, State's Attorney for Montgomery County,* on the brief, for appellant in No. 74.

*William J. Chen, Jr., Assistant County Attorney,* with whom were *Richard S. McKernon, Acting County Attorney, Alfred H. Carter, Deputy County Attorney,* and *Stephen P. Johnson, Assistant County Attorney,* on the brief, for appellant in No. 99.

*Selma W. Samols* and *Gary Howard Simpson* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Robin Ficker announced his candidacy for Congress from the Eighth Congressional District of Maryland on April 13, 1971. Shortly thereafter, "Your Friend Ficker" signs, advocating Ficker's congressional candidacy, began to appear in large numbers on utility poles, traffic control devices, and other structures within the municipal, County and State road rights of way in Montgomery County. In July of 1971, Ficker was notified by the Mont-

gomery County Division of Zoning, Permits and Licenses that he was violating the County Sign Ordinance (Montgomery County Code, 1965 Ed., as amended, Ch. 111), particularly §§ 111-28d(6), 111-28f(1)(f) and (g) which, among other things, restricted the posting of political campaign signs to private property not earlier than thirty days prior to the date of the primary election, and prohibited placement of signs on a municipal, County, or State right of way or the pasting or attachment thereof to utility poles or other signs.[1] Despite the County's notification, Ficker's campaign to innundate the Montgomery County landscape with "Your Friend Ficker" signs continued without letup. Thereafter, in September of 1971, the State's Attorney for Montgomery County instituted criminal proceedings against Ficker, alleging that the posting of Ficker's signs violated the provisions of Maryland Code, Article 66C, § 366, declaring it a misdemeanor, punishable by a fine up to $10.00, to affix or procure another to affix any sign to any "pole, building or other structure, which is in or upon the public highway or which is on the property of another, without first obtaining the written consent of such owner." Ficker was thrice convicted in October of 1971 in the District Court of affixing his signs to utility poles without permission in violation of this statute. On each occasion he posted the $10.00 fine, appealed to the Circuit Court for Montgomery County, and continued erecting "Your Friend Ficker" signs in violation of the State and County laws.

In November of 1971, at a radio interview, Ficker was asked about his convictions for violating § 366. He stated that he intended "to keep appealing because we feel a person who doesn't have a lot of money, who is not rich and does not have rich friends has to have a way of getting his name before the public." Ficker acknowledged during the interview that he had "lots of signs out at one time or another." He said "as fast as I put them up the County seems to be taking them down"; that the

---

1. The date of the primary election was *May 16, 1972*, more than a year from the time Ficker first announced his candidacy.

County has "as much as four crews of people out taking them down" but that he had "lots of people putting them up." Ficker expressed the belief at that time that the County Sign Ordinance constituted an unwarranted restriction on his First Amendment rights of free speech.

Between October 1971 and January 1972, the Maryland State Roads Commission removed 2,657 Ficker signs from utility poles within the State roads rights of way in Montgomery County. During this same period, Montgomery County removed 1,200 Ficker signs posted in violation of the County Ordinance; in doing so, it was required to employ four additional men at a cost of over $1,000.00. While the State and County were removing Ficker's signs, he was posting new ones in large numbers in such a way that they could not be removed without the aid of ladders or similar devices.

On January 4, 1972, Montgomery County, Maryland, acting through the County Attorney, filed its Bill of Complaint to enjoin Ficker from posting his political campaign signs in violation of the County's Sign Ordinance. The Bill alleged that although Ficker had been notified by the County that he was violating the Ordinance, and had three times been convicted of violating the similar State statute (Article 66C, § 366), he had not been thereby dissuaded from his illegal sign posting activity but continued to violate the Ordinance, causing the County to incur great expense in removing the signs. The Bill further alleged that Ficker's conduct "in posting the aforementioned signs constitutes a continuing violation of the * * * [County Ordinance], and, if such postings are allowed to continue, they will cause irreparable damage to the Plaintiff by continuing an unlawful activity which is detrimental to maintaining the peace, good government, health and welfare of Montgomery County, Maryland, and will establish a precedent for the wanton violation of the aforesaid laws." In addition to praying that Ficker be enjoined from continuing to post his political campaign signs in violation of the Ordinance, the County sought an order directing that Ficker

remove all illegally posted signs at his expense and that the County be awarded incidental damages for injury to its public streets and neighborhoods and for the cost incurred by it in removing the illegal signs.

On January 6, 1972, the State of Maryland, acting through the State's Attorney for Montgomery County, filed a Bill of Complaint to enjoin Ficker from violating the provisions of Article 66C, § 366. The Bill alleged that while Ficker had thrice been convicted of violating § 366, he nevertheless continued to engage in posting signs violative of that Section's provisions; that the cost of criminally prosecuting Ficker for each violation of the Section significantly exceeded the $10.00 maximum fine; that the State was therefore without an adequate remedy at law to enforce § 366, which was intended to protect property from unseemly and careless disfigurement; that Ficker's illegal conduct so disfigured utility poles "as to constitute a nuisance" and cause "irreparable harm and damage" to the people of the State. The Bill sought an order enjoining Ficker from violating § 366 "pending the outcome of * * * [Ficker's appeals from his criminal convictions]"; it also sought an order permanently enjoining Ficker from violating § 366 and an order requiring Ficker "to remove all signs presently existing in Montgomery County in violation of Article 66C, § 366."

Within a week after the State and County had filed their respective suits for injunctive relief, Ficker personally affixed his political campaign signs to five more utility poles in Montgomery County.

The Circuit Court for Montgomery County (Pugh, J.), following a hearing held on March 2, 1972, concluded by opinion dated April 5, 1972, that the State's Attorney for Montgomery County was not empowered to initiate a civil action to enjoin Ficker from violating § 366. The court added, by way of alternate independent grounds for dismissing the State's Bill for Injunctive Relief, that the criminal sanction for violating § 366 constituted an adequate remedy at law and, further, that

under the facts of the case, the posting of Ficker's signs, even though violative of § 366, did not constitute a public nuisance. From the court's decree denying injunctive relief, the State appealed.[2]

By opinion dated April 7, 1972, Judge Pugh also dismissed the County's suit for injunctive relief. While recognizing that Montgomery County had statutory authority to enforce the County's Sign Ordinance by filing a Bill for Injunctive Relief, the court held that "vigorous [criminal] prosecution" of Ficker under the provisions of § 111-28 *l* 4, which authorized imposition of a criminal penalty up to a $500.00 fine for each violation of the Ordinance, constituted "an adequate and more suitable remedy" than injunctive relief. From this decree of dismissal, the County appealed.

I

*The State's Suit for Injunctive Relief*

Ficker was defeated at the primary election held May 16, 1972; he is therefore no longer a viable candidate and his name will not appear on the ballot at the general election of November 7, 1972. Ficker claims that his signs posted in violation of § 366 have all been removed so that the acts sought to be enjoined by the State have now ceased. At oral argument of the appeal, counsel for the State conceded that Ficker's signs posted in violation of § 366 have now been removed. While the State does not contend that Ficker is continuing to erect signs in violation of § 366, it suggests that the injunctive relief sought was improperly withheld because it is likely that Ficker will post political campaign signs in violation of § 366 in future elections and a permanent injunction to prohibit him from doing so should have been granted.

Appellate courts do not sit to give opinions on abstract

2. Ficker's appeals to the Circuit Court from his convictions for violating § 366 were decided against him by Judge Pugh on March 2, 1972.

propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course. *Potts v. Governor of Maryland,* 255 Md. 445; *Washburne v. Hoffman,* 242 Md. 519. Since the acts sought to be enjoined have ceased and the offending signs removed, it would be an act of futility, a useless gesture of no effect whatsoever, to consider the question whether the Chancellor erred in not enjoining Ficker from violating the provisions of § 366. See *State v. Sheridan,* 248 Md. 320. In these circumstances, we think it manifest that the case is now moot and must be dismissed. Maryland Rule 835 (b) (8) ; *Prucha v. Weiss,* 233 Md. 479; *Thom v. Cook,* 113 Md. 85. We see nothing in the facts of this case which would warrant application of the rule in *Lloyd v. Supervisors of Elections,* 206 Md. 36, that an appeal, even though moot, will not be dismissed where the urgency of establishing a rule of future conduct in matters of important public concern is both imperative and manifest.

## II

### *The County's Suit for Injunctive Relief*

Montgomery County contends that the Chancellor erred in denying it the relief prayed in its Bill and in concluding that criminal prosecution was "an adequate and more suitable remedy" than an injunction. It claims that its suit for injunctive relief has not become moot by reason of the fact that Ficker was defeated at the primary election of May 16, 1972 and is no longer posting political campaign signs in violation of the County Sign Ordinance. Unlike the State, the County does not concede that all Ficker signs posted in violation of its law have now been removed. Quite to the contrary, the County maintains that in view of the prayers contained in its Bill for damages to public property, and for orders directing that Ficker remove all illegally posted signs and reimburse the County for the expenses incurred in removing the illegal signs, its suit is not one calling for applica-

tion of the rule of *Potts* and *Washburne* that appeals which present nothing for decision must be dismissed. We think the County's position is well taken and that its case on appeal is in a posture not unlike that in *Phillips Roofing Co. v. Md. Broadcasting Co.*, 184 Md. 187. In that case, the Chancellor dismissed a Bill of Complaint for injunction seeking equitable relief from cancellation of a contract. During the pendency of the appeal from the Chancellor's decree of dismissal, the contract terminated by its own terms, leaving only the question of possible damages unresolved. In reversing the Chancellor's dismissal of the Bill, we held at 197-98:

> "* * * Even though the granting of the injunction would be a nugatory act, the Chancellor should retain his jurisdiction until he makes a final decree determining all the rights and equities of the parties within the scope of the pleadings for the purpose of granting complete relief. *Poe v. Munich Re-Insurance Co.*, 126 Md. 520, 95 A. 164; *Smith v. Shiebeck*, 180 Md. 412, 24 A. 2d 795; *Borssuck v. Pantaleo*, 183 Md. 148, 36 A. 2d 527. * * *"

We conclude that while the question whether the Chancellor erred in not enjoining Ficker from continuing to post signs in violation of the County Ordinance is now an academic issue—no new signs having been posted since Ficker's defeat and he no longer being a candidate for Congress—the question of the Chancellor's refusal to grant the other relief prayed in the County's Bill is properly before us, and we now proceed to consider it.

In his opinion denying the relief prayed by the County, the Chancellor recognized the rule that "there may be cases where the remedy at law by criminal prosecution and punishment would not be adequate under the circumstances and where the remedy in equity by injunction would furnish more effectual and complete relief." With due regard to the Chancellor's wide discretion in grant-

ing or denying injunctive relief (see *Moore v. McAllister,* 216 Md. 497), we think he misconceived what constitutes an adequate remedy at law.

In *C. & P. R.R. Co. v. Penna. R.R. Co.,* 57 Md. 267, 271, we quoted, with approval, Story's definition of an adequate remedy at law:

> " '* * * It must be adequate; for if at law it falls short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, must obtain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in the future; otherwise, equity will interfere and give such relief and aid as the exigency of the particular case may require. The jurisdiction of a court of equity is, therefore, sometimes concurrent with the jurisdiction of a court of law, it is sometimes exclusive of it; and it is sometimes auxiliary to it.' "

We applied the principle in *Baker v. Howard County Hunt,* 171 Md. 159, 174-75, stating:

> "To justify refusal of equitable relief on the ground that the appellant therefor has a remedy at law, the legal remedy must be fully adequate and complete * * *, for, as stated in *Fletcher, Equity Pleadings & Practice,* p. 246, 'The remedy at law which precludes relief in equity must be as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.' "

This policy of complete and adequate relief is consonant with the distinction noted in *Clark v. Todd,* 192 Md. 487. There, we allowed an injunction restraining the defendants from dredging oysters from illegally licensed boats despite the existence of criminal penalties up to

$500.00 or imprisonment up to six months, or both. We said:

> "On the main issue the [lower] Court held in each case that equity lacks jurisdiction to grant injunctive relief, because complainants have an adequate remedy at law by instituting criminal proceedings against any individuals violating Section 7 of the Oyster Law. In that decision the Courts erred. The rule is well established that where acts complained of are violations of the criminal law, courts of equity will not on that ground alone interfere by injunction to prevent their commission. This rule, however, does not preclude injunctive relief against the commission of criminal acts which, unless enjoined, would operate to cause an irreparable injury to property or rights of a pecuniary nature. If criminal offenses are primarily and essentially an injury to property, preventive relief may be granted within the same limits as where the element of criminality is entirely absent. In such a case the Court does not interfere to prevent the commission of crime, although that may incidentally result, but it exerts its force to protect individual property from destruction. * * *" 192 Md. at 492.

To like effect is our statement in *Dvorine v. Castelberg Jewelry Corp.*, 170 Md. 661, 668 that equity will enjoin criminal acts if such operate to the injury of complainant's property rights or causes him pecuniary harm for which there is no adequate legal remedy.

We think the illegal posting of Ficker's political campaign signs in such inordinate numbers in direct violation of the Ordinance caused irreparable injury to the County's rights of a pecuniary nature for which loss the criminal sanction was plainly inadequate. The relief sought by the County in its Bill—removal of the remaining illegal signs at Ficker's own expense, reimburse-

ment for expenses previously incurred in removing Ficker's signs, and damages for injury to its property —would not have accrued to the County from successful criminal prosecution. The monetary fines resulting from prosecutions for violations of the County Ordinance inure to the general funds of the State and in no way would have benefited the County. See Code (1971 Cum. Supp.) Article 26, §§ 145 (b) (2) (ii), 151 (a), 155. Thus, contrary to Ficker's claim that prompt criminal action would have provided the County with a fund with which to pay the costs of sign removal, no such resolution of the County's dilemma would have resulted from pursuing the criminal remedy. Moreover, in view of Ficker's well-demonstrated contempt for the criminal penalties provided by State and County law for the illegal posting of signs, it is unlikely that prompt criminal action under the provisions of the Ordinance would have deterred Ficker from continuing his sign posting activities; indeed, he has always claimed that he enjoys the right, under the free speech provisions of the First Amendment, to post his signs without regard to the inhibiting provisions of the County's Ordinance. We thus conclude that imposition of criminal penalties upon Ficker would not have reached the whole mischief and secured the whole right of the County for the present and future, and, consequently, the criminal remedy was not complete. See *Mitchell v. Houstle*, 217 Md. 259; *Adams v. Commissioners of Trappe*, 204 Md. 165; *Whitman v. United Surety Co.*, 110 Md. 421. Of course, that the County did not undertake "vigorous prosecution" of Ficker under its Ordinance does not limit or control its right to seek injunctive relief, as suggested by the Chancellor.

Since the remedy at law is plainly inadequate, we shall vacate the decree of dismissal and remand the case for further proceedings on that portion of the Bill not rendered moot by subsequent events. On remand, the Chancellor will be required to consider the question of the constitutionality of the County's Sign Ordinance, raised

by Ficker in the proceedings below but which the Chancellor found unnecessary to resolve in view of his dismissal of the County's Bill. If the Chancellor finds the Ordinance constitutional, it would follow that the monetary and other relief prayed by the County, if justified by the proof, should be granted.[3]

> *In No. 74 decree dismissing the bill of complaint of the State of M a r y l a n d affirmed; costs to be paid by the State.*
>
> *In No. 99 decree dismissing Montgomery County's bill of complaint vacated; case remanded for further proceedings in accordance with this opinion; costs to be paid by appellee.*

---

3. Ficker's contention that the appeal should be dismissed for failure of the County to exhaust its administrative remedies was neither raised nor considered below, and we do not therefore consider the question. Maryland Rule 885. Nor was Ficker's contention that the County's suit for injunctive relief is foreclosed by the double jeopardy provisions of the federal constitution considered by the Chancellor, although on its face the contention appears patently frivolous.