553 A.2d 672

**STATE of Maryland**

v.

**Norman PETERSON.**

**No. 20, Sept. Term, 1988.**

Court of Appeals of Maryland.

Feb. 27, 1989.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

John D. Thompson (Thompson and Fleming, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ELDRIDGE, Judge.

The third sentence of Maryland Rule 4-346(c) provides that a revocation of probation hearing "shall be held before the sentencing judge, whenever practicable." [1] We granted the State's petition for a writ of certiorari in this case to decide whether the Court of Special Appeals had misapplied this provision. Although events subsequent to the issuance of a writ of certiorari have rendered the case moot, we shall nevertheless set forth our views concerning the interpretation and application of the third sentence of Rule 4-346(c).

On January 6, 1984, in the Circuit Court for Baltimore City, Norman Peterson pled guilty to charges of driving while intoxicated and driving on a revoked license. District Court Judge Alan M. Resnick, temporarily assigned to the circuit court, imposed two consecutive sentences of eighteen

---

1. Rule 4-346(c) in its entirety provides as follows (emphasis added):

"(c) **Hearing on Violation of Conditions.**—On motion of the State's Attorney or by its own order, the court may hold a hearing to determine whether any condition of probation has been violated. The motion or order shall state each violation of conditions charged and shall be served on the defendant in sufficient time before the hearing to permit a reasonable opportunity to rebut the charges. *The hearing shall be held before the sentencing judge, whenever practicable.* The provisions of Rule 4-242 do not apply to an admission of violation of conditions of probation."

months imprisonment, as well as a $500.00 fine and court costs. Judge Resnick suspended all but one month of the prison sentences pursuant to Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 641A, and placed Peterson on probation for three years. As conditions of his probation, Peterson was to attend an alcohol program and an alcohol restriction was placed on his driver's license.

In September 1986 Peterson was charged with violating the conditions of his probation. On April 6, 1987, a probation revocation hearing was held before Chief Judge Robert I.H. Hammerman of the Circuit Court for Baltimore City. At that hearing the following colloquy took place:

"[PETERSON'S ATTORNEY]: ... I notice that this is a violation of a sentence imposed ... by His Honor Judge Resnick while sitting in the Circuit Court on January 6th, 1984, and Judge Resnick is still a member of the judiciary in the same capacity he was on January 6th, 1984, and I question why we are not before Judge Resnick since this is his case.

"THE COURT: Because he is not sitting in the same capacity now that he was at that time. At that time he was sitting as a judge of the Circuit Court for Baltimore City. Today he is sitting as a judge of the District Court for Baltimore City. He is not assigned to this bench, and it is the practice of this bench, as authorized by the Maryland Rules, that when the judge who imposed the original sentence is not available for further proceedings it may be assigned to another judge of that bench. Judge Resnick is no longer a judge assigned to the Circuit Court for Baltimore City.

"[PETERSON'S ATTORNEY]: If Your Honor please, for the record, it is my opinion that His Honor Judge Resnick is available. He is still the same associate District Court judge that he was on January, 1984 and I just question why this case is not being presented—

"THE COURT: Well, you are making the same statement and asking the same question you did a moment ago and I can only say I repeat the same answer.

"[PETERSON'S ATTORNEY]: Just officially on behalf of my client, I ask that this matter be referred to Judge Resnick for disposition.

"THE COURT: Your request is denied...."

Following testimony from the probation officer and arguments of counsel, Judge Hammerman revoked Peterson's probation and reinstated his original sentence, less credit for time served.

Peterson appealed to the Court of Special Appeals, which reversed and remanded. *Peterson v. State*, 73 Md.App. 459, 534 A.2d 1353 (1988). The intermediate appellate court took the position that " 'whenever practicable' [within the contemplation of Rule 4–346(c) ] should be decided on a case-by-case basis with a fact-finding process to determine if it *is* practicable to have the judge who imposed probation preside at the revocation proceeding." 73 Md.App. at 467, 534 A.2d at 1357. The Court of Special Appeals held that Judge Hammerman's ruling, on Peterson's request that Judge Resnick preside, failed to comply with Rule 4–346(c) because "Judge Hammerman made no findings as to the practicality of having Judge Resnick preside over [Peterson's] probation revocation proceedings...." 73 Md.App. at 469, 534 A.2d at 1358. The court went on to hold that "denying [Peterson's] request that Judge Resnick hear the case without any determination of the practicality of having Judge Resnick preside violated [Peterson's] rights under Rule 4–346(c)." *Ibid.* The Court of Special Appeals concluded that "there is nothing in the record to show, or even suggest, that it was not practical for Judge Resnick to have heard this case." 73 Md.App. at 472, 534 A.2d at 1360. In fact, pointing to the scope of the order designating Judge Resnick to sit on the Circuit Court for Baltimore City, and to the close proximity of the District Court locations (where Judge Resnick usually sat) to the Circuit Court for Baltimore City, the Court of Special Appeals implied that it had been practicable for Judge Resnick to have presided at the probation revocation hearing. 73 Md.App. at 470–471, 534 A.2d at 1359. The appellate court stated that, "[a]t the

very least, it was incumbent upon the court to place a telephone call, inquiring into Judge Resnick's availability," 73 Md.App. at 471, 534 A.2d at 1359.[2]

The State then filed a petition for a writ of certiorari. This Court granted the petition and issued a writ of certiorari on June 2, 1988.

Despite the issuance of the writ of certiorari, another revocation of probation hearing was held in the Circuit Court for Baltimore City, on August 1, 1988, before Judge Roger W. Brown. Peterson made no request that Judge Resnick preside. At oral argument before us, we were told that Peterson had been quite happy to have been before Judge Brown. The State did not object. Apparently no one told Judge Brown that this Court had issued a writ of certiorari. At the hearing before Judge Brown, Peterson admitted that he had violated his probation. Judge Brown sentenced him to one year imprisonment, less credit for time served, a $500 fine, and court costs. The prison sentence was suspended in favor of five months probation. An alcohol restriction was placed on Peterson's driver's license, and he was to attend an alcohol screening and treatment program.

## I.

It is clear that the present appellate proceedings have become moot.

---

**2.** The Court of Special Appeals also held that the third sentence of "Rule 4–346(c) severely limits the authority granted by Art. 27, § 642," 73 Md.App. at 467, 534 A.2d at 1357. Section 642 of Art. 27, first enacted by Ch. 398 of the Acts of 1927, relates generally to decisions not to impose sentences, the suspension of sentences, probation, and violations of probation. Among other things, the statute does authorize the "judge who is then presiding in that particular court" to hear an alleged violation of probation. In light of the conditions existing when the statute was passed, and the wording of the statute, we doubt that the principal focus of § 642 concerns which of several possible judges should be assigned to hear a probation revocation charge. In any event, our construction of Rule 4–346(c) in Part III of this opinion removes any possibility of a conflict between § 642 and Rule 4–346(c).

When the State and Peterson both acquiesced in appearing before Judge Brown for the probation revocation hearing, the parties, in effect, waived any objection to proceeding before Judge Brown, waived any claim that Judge Resnick was required to preside, and waived any argument that under Rule 4–346(c) Judge Resnick was not required to preside. The issue concerning the practicability of returning Judge Resnick to the circuit court for the hearing disappeared from the case. "[T]here is no longer an existing controversy between the parties, so there is no longer any effective remedy which the court can provide." *Attorney Gen. v. A.A. School Bus,* 286 Md. 324, 327, 407 A.2d 749, 752 (1979). The case is now moot, unless the circuit court was without subject matter jurisdiction to proceed with the hearing at which Judge Brown presided. The State argues that issuance of the writ of certiorari deprived the circuit court of jurisdiction to do so, rendering the proceedings before Judge Brown a nullity.

This Court has consistently taken the view that, when an appeal is taken, the trial court may continue to act with reference to matters not relating to the subject matter of, or matters not affecting, the appellate proceeding; it may also act in furtherance of the appeal. Nevertheless, with regard to matters relating to the subject matter of the appeal, or affecting the appeal, and not in furtherance of it, we at one time took the position that the appellate court "is vested with the exclusive power and jurisdiction over the subject matter of the proceedings, and the authority and control of the lower court with reference thereto are suspended." *Bullock v. Director,* 231 Md. 629, 633, 190 A.2d 789, 792 (1963), *overruled in Pulley v. State,* 287 Md. 406, 416 n. 2, 412 A.2d 1244, 1250 n. 2 (1980). *See also, e.g., Staggs v. Blue Cross of Maryland,* 57 Md.App. 576, 578, 471 A.2d 326, 327 (1984), *overruled in Makovi v. Sherwin–Williams Co.,* 311 Md. 278, 283, 533 A.2d 1303, 1306 (1987). As pointed out in *Pulley v. State, supra,* 287 Md. at 416–417, 412 A.2d at 1251, *Bullock* and similar cases confused the concepts of fundamental jurisdiction with the

propriety of exercising jurisdiction. Judge Digges for the Court explained in *Pulley* the effect of an appeal as follows (287 Md. at 417, 412 A.2d at 1250):

"In other words, the trial court retains its 'fundamental jurisdiction' over the cause, but its right to exercise such power may be interrupted by (i) statute or Maryland Rule, (ii) the posting of authorized appeal bond, or bail following a conviction and sentence, or (iii) a stay granted by an appellate court, or the trial court itself, in those cases where a permitted appeal is taken from an interlocutory or final judgment."

Further (287 Md. at 419, 412 A.2d at 1251):

"If the trial court does, however, decide to proceed during the pendency of the appeal, it, absent a stay required by law, or one obtained from an appellate court, has the authority to exercise the 'fundamental jurisdiction' which it possesses."

The issue in the present case is analogous to the issue presented to this Court in *In re Special Investigation No. 281*, 299 Md. 181, 473 A.2d 1 (1984). There, subpoenas duces tecum were served upon the custodian of certain dental records. The custodian filed a motion to quash the subpoenas; this motion was denied by the circuit court judge. An appeal was filed, but a stay pending appeal was denied. Upon the expiration of the time for production of the dental records, but before adjudication of the appeal, the custodian was held in contempt. We held that the circuit court's issuance of the contempt order was proper because the court retained fundamental jurisdiction over the case, notwithstanding the pending appeal. *See also Makovi v. Sherwin–Williams Co., supra,* 311 Md. at 283, 533 A.2d at 1305 (premature order of appeal does not divest trial court of jurisdiction to enter a final judgment); *Stewart v. State,* 287 Md. 524, 528–529, 413 A.2d 1337, 1339 (1980) (indictment received by trial court, prior to issuance of mandate by the Court of Special Appeals in an appeal of juvenile court's waiver of jurisdiction, is not void); *Pulley v. State, supra,* 287 Md. at 418–419, 412 A.2d at 1251 (trial

continued despite defendant's immediate appeal of an inter-
locutory order denying defendant's double jeopardy claim;
subsequent trial not void).

The above-cited cases deal with the effect of appeals, but
the same principles apply in the context of the issuance of a
writ of certiorari. In this case, no stay was granted by this
or any court. The Circuit Court for Baltimore City had and
retained fundamental jurisdiction, conferred by the Consti-
tution and the General Assembly, to handle a revocation of
probation hearing. *See* Art. 27, § 642. As the circuit court
had jurisdiction to act according to the mandate of the
Court of Special Appeals, this case is moot.[3]

## II.

Ordinarily, we would end our opinion at this point.
"[G]enerally when a case becomes moot, we order that the
appeal or the case be dismissed without expressing our
views on the merits of the controversy." *Mercy Hosp. v.
Jackson*, 306 Md. 556, 562, 510 A.2d 562, 565 (1986). As
Chief Judge Murphy stated for the Court in *State v. Ficker*,
266 Md. 500, 506–507, 295 A.2d 231 (1972), "[a]ppellate
courts do not sit to give opinions on abstract propositions or
moot questions, and appeals which present nothing else for
decision are dismissed as a matter of course."

Nevertheless, there is no constitutional prohibition
which bars this Court from expressing its views on the
merits of a case which becomes moot during appellate
proceedings. *Reyes v. Prince George's County*, 281 Md.
279, 296, 380 A.2d 12 (1977). We will do so, however, "only
in rare instances which demonstrate the most compelling of

---

3. Whether it was proper for the circuit court to have proceeded after
we issued a writ of certiorari, as opposed to whether it had the power
to do so, is not before us. We think that a trial court ordinarily
should not proceed with a hearing in the circumstances here, thereby
mooting an issue before an appellate court. We have no doubt that,
had Judge Brown been informed of the procedural posture of the
case, or had there been an objection based on that posture, he would
not have held the hearing.

circumstances." *Reyes v. Prince George's County, supra,* 281 Md. at 297, 380 A.2d at 22. In *Lloyd v. Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379, 382 (1954), Judge Hammond emphasized for the Court that "only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions."

We believe that this is one of those "rare instances" in which the Court should express its views on the merits of a moot case.

Maryland's trial courts dispose of thousands of criminal cases in any given year. For example, during Fiscal 1988, the circuit courts terminated 52,039 criminal cases and appeals and the District Court processed 144,060 criminal cases (counted by the number of defendants charged). *Annual Report of the Maryland Judiciary 1987–1988,* Table CC–6.9, at 48; Table DC–7, at 83. Of course, not all these terminations or processings result in convictions, and not all convictions result in probation, but it may safely be as-sumed that probation is not an infrequent disposition in criminal cases.[4] Proceedings for revocation of probation are also numerous.[5]

In the context of the third sentence of Rule 4–346(c), it is important to recognize that sentencing and probation revo-cation proceedings may occur months or even years apart, and that the judge presiding, in a particular county, at trial and sentencing may not be a resident judge in that county or even a regular judge of the court in which he or she is then sitting. The Chief Judge of the Court of Appeals has

---

4. In Fiscal 1986, the Division of Parole and Probation received 39,823 probationers from the circuit courts and the District Court. *Maryland Division of Parole and Probation Annual Report Fiscal Years 1985 and 1986,* at 69.

5. In Fiscal 1988 there were 5,605 probation revocation hearings in the circuit courts. Letter from Robert Givson, Administrator of the Maryland Office of Research and Statistics, to Peter Lally, Assistant State Court Administrator (Nov. 15, 1988).

84

broad power to "assign any judge except a judge of the Orphans' Court to sit temporarily in any court except an Orphans' Court." Art. IV, § 18(b), of the Maryland Constitution. *See also* Maryland Rule 1202 a 1. Moreover, circuit administrative judges possess the authority to provide for intracircuit assignments. Rule 1202 b 1.

The temporary recall of retired judges pursuant to Art. IV, § 3A, of the Maryland Constitution has, in recent years, somewhat diminished the intercircuit assignment of circuit court judges. *Compare Annual Report of the Maryland Judiciary 1983–1984,* at p. 18, with *Annual Report of the Maryland Judiciary 1987–1988,* at p. 96. But intracircuit assignment of those judges is common. *Ibid.* Moveover, during Fiscal 1988, inter-district assignments within the District Court produced 500 judge days. *Ibid.* In the same time period, the District Court provided the circuit courts with 292 judge days of assistance, 178 of those judge days in the Circuit Court for Baltimore City. *Ibid.*

Thus, for example, when the sentencing judge who imposes probation is sitting temporarily in the Circuit Court for Baltimore City, but holds his appointment as a judge of the District Court and is resident in Worcester County, it is quite likely that judge will be back in Worcester County (or elsewhere in the State) if and when the defendant is brought into the Circuit Court for Baltimore City for a probation revocation hearing. Under the opinion of the Court of Special Appeals, in these circumstances the defendant would have a "right" under Rule 4–346(c) to have the Worcester County District Judge preside at his Baltimore City circuit court revocation proceeding unless the record demonstrates that it would be impractical, and the presiding judge makes findings to that effect.

Considering the busy dockets of Maryland courts, the administrative complexity of intercourt and intercounty judicial assignments, and the numbers of cases and individuals involved, the issue in this case assumes major public importance. Unlike the questions in *Mercy Hosp. v. Jackson, supra,* the answers to which would have had no

general application and which involved difficult constitutional questions, 306 Md. at 563–564, 510 A.2d at 565–566, the resolution of the issue in this case can be applied throughout our court system. We are presented with a question of rule construction. Our construction of the rule involved will serve to guide judges and assignment officials in trial courts throughout the State. In addition, the rights of probation revocation defendants and the duties of the court system with regard to them will be clarified. Furthermore, it is important that the guidance we provide in this matter be furnished promptly, for the problems presented by this case, as our discussion suggests, may be widespread and frequently recurring.

### III.

The third sentence of Rule 4–346(c) states that a probation revocation "hearing shall be held before the sentencing judge, whenever practicable." The provision, thus, sets forth an uncomplicated flexible standard for the assignment of judges in probation revocation cases. As previously discussed, however, the Court of Special Appeals adopted the view that the provision confers an enforceable right upon the defendant to have the original sentencing judge preside at the probation revocation hearing unless the presiding judge finds that this is not practicable and unless the record supports the finding.

We disapprove of the Court of Special Appeals' construction and application of the third sentence of Rule 4–346(c). If this case were not moot, we would reverse the Court of Special Appeals' judgment with directions that the judgment of the circuit court be affirmed.

Generally, a litigant has no right to have his case heard before a particular judge. *Lane v. State*, 226 Md. 81, 93, 172 A.2d 400, 406 (1961), *cert. denied*, 368 U.S. 993, 82 S.Ct. 611, 7 L.Ed.2d 529 (1962); *United States v. Corn*, 836 F.2d 889, 892 (5th Cir.1988); *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir.1984); *United States v. Radlick*, 581

F.2d 225, 230 (9th Cir.1978); *United States v. Braasch,* 505 F.2d 139, 147 (7th Cir.1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975); *Hvass v. Graven,* 257 F.2d 1, 5 (8th Cir.), *cert. denied,* 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed.2d 72 (1958); *Badertscher v. Badertscher,* 10 Ariz. App. 501, 460 P.2d 37, 40 (1969); *McDonald v. Goldstein,* 191 Misc. 863, 869, 83 N.Y.S.2d 620, 625, *aff'd* 273 App.Div. 649, 79 N.Y.S.2d 690 (1948).

Consistent with the principle that a litigant has no right to a hearing before a particular judge, courts regularly hold that statutes and rules relating to the assignment of judges ordinarily are not intended to confer enforceable rights upon the parties to the litigation. *See, e.g., Sinito v. United States, supra,* 750 F.2d at 515–516; *United States v. Torbert,* 496 F.2d 154, 157 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974); *United States v. Dichiarinte,* 385 F.2d 333, 337 (7th Cir.1967), *cert. denied,* 390 U.S. 945, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968); *Levine v. United States,* 182 F.2d 556, 559 (8th Cir.1950), *cert. denied,* 340 U.S. 921, 71 S.Ct. 352, 95 L.Ed. 665 (1951); *Padie v. State,* 566 P.2d 1024, 1027–1028 (Alaska 1977); *Kruckenberg v. Powell,* 422 So.2d 994, 995–996 (Fla.App. 1982); *Stevens v. Wakefield,* 163 Ga.App. 40, 292 S.E.2d 516, 518 (1982); *State v. Mahoney,* 34 Ohio App.3d 114, 517 N.E.2d 957, 960 (1986).

For example, *United States v. Dichiarinte, supra,* involved a rule "requiring that when a case is dismissed and a second case is filed involving the same parties and subject matter, it is to be reassigned to the judge to whom the original case was assigned." 385 F.2d at 337. The defendant in that criminal case argued on appeal that his trial, which was before a different judge than the judge assigned to an earlier proceeding, was in violation of the rule and that, therefore, his conviction should be reversed. In affirming the conviction, the United States Court of Appeals for the Seventh Circuit pointed out that such rules were not intended "to create a right in a litigant to have his case heard by a particular judge." *Ibid.*

 There are, of course, exceptions to the general principle that judicial assignment rules do not create rights enforceable by litigants. These exceptions include constitutional provisions, statutes, or rules requiring the disqualification of particular judges in specific situations, circumstances where a particular judge might appear to be prejudiced, or rules which were manifestly intended to confer enforceable rights upon litigants. The third sentence of Rule 4-346(c), however, falls within none of these exceptions.

The language and history of Rule 4-346(c)'s third sentence refute any argument that the provision was manifestly intended to confer enforceable rights upon the parties to a probation revocation proceeding. The phrase "whenever practicable" is certainly not compatible with the idea that the defendant has a right, reviewable on appeal, to have the original sentencing judge assigned to the probation revocation proceedings. The words "whenever practicable" or "as practicable," according to our cases, "are of a relative and dependent character, to be controlled more or less by the circumstances of the case, and by no means furnish a definite and fixed rule." *Lankford v. Somerset County,* 73 Md. 105, 113-114, 20 A. 1017, 1019 (1890). *See Selinger v. Governor of Maryland,* 266 Md. 431, 435, 293 A.2d 817, 819, *cert. denied,* 409 U.S. 1111, 93 S.Ct. 922, 34 L.Ed.2d 693 (1972); *Robey v. Broersma,* 181 Md. 325, 341, 29 A.2d 827, 830 (1943). *See also, e.g., Young v. Travelers Ins. Co.,* 119 F.2d 877, 880 (5th Cir.1941) (they "are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in their nature ambulatory and subject ... to the impact of particular facts on particular cases"); *Petition of Gally,* 329 Mass. 143, 148-149, 107 N.E.2d 21, 25 (1952); *Transamerica Ins. Co. v. Parrott,* 531 S.W.2d 306, 312-313 (Tenn.App.1975). They obviously are not words which would be employed if Rule 4-346(c) were manifestly intended to confer a specific right upon the defendant to have a particular judge hear his case.

The Court of Special Appeals correctly indicated that the phrase "whenever practicable" is flexible and depends upon the particular circumstances pertinent to the case.[6] *Peterson v. State, supra,* 73 Md.App. at 467, 534 A.2d at 1357. What the intermediate appellate court overlooked, however, is that the relevant circumstances include more than the scope of the original order designating Judge Resnick to sit on the circuit court, Judge Resnick's normal geographical proximity to the circuit court location, and Judge Resnick's view of his availability to preside at the probation revocation hearing. The circumstances include the effect upon the judicial assignment system of the Circuit Court for Baltimore City, the judicial assignment system of the District Court, and intercourt assignments of judges under orders of the Chief Judge of the Court of Appeals.[7] In the present case, the relevant circumstances also include the impact upon Judge Resnick's dockets and the business of the court or courts to which he is presently assigned. More generally, there must be considered the substantial systemic problems which arise when judges must move from court to court and from geographical

---

6. The particular circumstances of the case, of course, must be viewed in light of the policy embodied in Rule 4–346(c) favoring the original sentencing judge as the presiding judge at the probation revocation hearing. This policy is particularly strong, although not absolute, when the original sentencing judge notes on the record that he or she wishes to preside at any revocation hearing. Such action underscores the sentencing judge's particular concern for the defendant and the effectiveness of the probation.

7. We have previously discussed in detail the complex and intricate nature of judicial assignment and case scheduling systems. *See State v. Frazier,* 298 Md. 422, 470 A.2d 1269 (1984).

Presumably, under the Court of Special Appeals opinion in this case, a determination by the presiding judge at a probation revocation hearing, that it is "practicable" for the original sentencing judge to conduct the hearing, overrides assignment orders by the circuit or county administrative judges pursuant to Rule 1202, overrides assignment orders by the Chief Judge and administrative judges of the District Court pursuant to Code (1974, 1984 Repl.Vol.), §§ 1–605 and 1–607 of the Courts and Judicial Proceedings Article, and overrides assignment orders of the Chief Judge of the Court of Appeals pursuant to Art. IV, § 18(b), of the Maryland Constitution.

locations that may sometimes be at a considerable distance from the court in which a probation revocation hearing is to be held. Furthermore, under the Court of Special Appeals' opinion, in almost every case where the presiding judge at the probation revocation hearing finds that it is practicable for the original sentencing judge to preside, a postponement of the probation revocation hearing will be required. This "circumstance," and the effect of a multitude of postponements upon the parties, the witnesses, the administration of the judiciary, and the public, must all be considered.

In sum, the circumstances generally include the various facets of the complex administration of two separate trial court systems, both in a particular locality and statewide. In the context of Rule 4-346(c), this is part of the meaning of the words "whenever practicable." It is a meaning totally at odds with the Court of Special Appeals' view that the third sentence of Rule 4-346(c) confers a right upon the defendant to have a particular judge hear his probation revocation case and that the judicial assignment in this case violated the defendant's right.

The history of Rule 4-346(c)'s third sentence was set forth in detail in the Court of Special Appeals' opinion, *Peterson v. State, supra,* 73 Md.App. at 464-466, 534 A.2d at 1355-1356, and we shall not repeat that history here. The history shows, however, that the "whenever practicable" language ultimately adopted was purposely more flexible than several proposed alternates.[8] The "whenever practicable" language was specifically intended to foster the

---

**8.** The Rules Committee of the Court of Appeals rejected the originally proposed rule, which simply stated: "The hearing should be held by the sentencing judge." *Peterson v. State, supra,* 73 Md.App. at 464, 534 A.2d at 1355. The Committee also rejected proposed language saying that the sentencing judge should preside unless he "has been removed from office, has died or resigned, or is otherwise incapacitated ..."; that "the [revocation] hearing should be held by the sentencing judge providing he is not disabled or deceased"; and that the trial judge should preside "unless there are compelling reasons in a specific case to provide otherwise." *Peterson v. State, supra,* 73 Md.App. at 465-466, 534 A.2d at 1356.

policy of assigning the original judge to the probation revocation hearing, while at the same time allowing flexibility in the assignment of judges. It is entirely in accord with the settled principle that judicial assignment rules do not grant enforceable rights to litigants.

Finally, our determination that the third sentence of Rule 4-346(c) does not confer enforceable rights upon individual litigants, neither minimizes the important policy underlying the provision nor results in an absence of sanctions when that policy is ignored. There are several statutes and rules of judicial procedure which, if violated, do not carry sanctions operating as a benefit or detriment to particular litigants. The appropriate sanctions for violating these rules are normally ones of internal judicial administration. *See, e.g., In re Keith W.,* 310 Md. 99, 107–109, 527 A.2d 35, 40 (1987); *State v. One 1980 Harley Davidson,* 303 Md. 154, 160–162, 492 A.2d 896, 899 (1985); *Farinholt v. State,* 299 Md. 32, 40–41, 472 A.2d 452, 456 (1984); *In re Dewayne H.,* 290 Md. 401, 405–407, 430 A.2d 76, 79–80 (1981); *State v. Hicks,* 285 Md. 310, 335, 403 A.2d 356, 369 (1979). If, in a particular locality, the policy of Rule 4-346(c) is ignored, we are confident that the situation will be remedied by appropriate administrative action.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE APRIL 6, 1987, JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE EVENLY DIVIDED.

ADKINS, J., concurs and files an opinion in which COLE and McAULIFFE, JJ., join.

ADKINS, Judge, concurring.

The Court correctly holds that this case is moot; therefore, I concur in the Court's judgment. I also agree that this is one of those rare situations where the Court should express its views on the merits of a moot case. But I

cannot agree with the views of either the majority or the Court of Special Appeals concerning the third sentence of Maryland Rule 4–346(c).

That third sentence requires that a probation revocation "hearing shall be held before the sentencing judge whenever practicable." The majority reasons that a litigant ordinarily has no right to have his or her case heard before a particular judge; therefore, rules relating to the assignment of judges ordinarily do not confer enforceable rights upon litigants. The majority further concludes that the language and history of Rule 4–346(c)'s third sentence preclude any contention that the provision was intended to confer enforceable rights upon a party to a probation revocation hearing. I have quite a different view of the objective sought to be achieved by this third sentence, and, therefore, of its effect.

The premise underlying that provision is an important policy concept. It is the notion that the sentencing judge, with his presumably greater knowledge of the facts both as they relate to the underlying case and as they bear on the defendant, can best exercise an informed discretion in shaping a sanction if probation has been violated. *See Smith v. State,* 598 P.2d 1389, 1391 (Wyo.1979) (quoted in *Peterson v. State,* 73 Md.App. 459, 472, 534 A.2d 1353, 1359–1360).

That concept likely moved the Standing Committee on Rules of Practice and Procedure when, in its Fifty-third Report, it proposed Rule 775, the precursor of Rule 4–346. 3 Md.Reg. 8, 25 (7 Jan.1976). The pertinent section of the proposed rule read:

C. Hearing on Violations of Conditions.

Upon the motion of the State's Attorney or upon its own motion, the court may hold a hearing to determine whether any condition of probation has been violated. The motion shall state each violation of conditions charged and shall be served on the defendant sufficiently before the hearing to permit him a reasonable opportuni-

ty to rebut the charges. *The hearing should be held by the sentencing judge.* [Emphasis supplied.]

The final sentence in this draft is cast in hortatory rather than mandatory terms, but clearly embodies a policy strongly favoring use of the sentencing judge at the revocation hearing.[1]

The proposal produced some concerns on the part of the then State Court Administrator and several judges, a number of whom urged that more flexibility should be built into the rule. Judge Bloom, for the Court of Special Appeals, recounts that history with accuracy and clarity, and like the majority, I find no need to repeat it here. *Peterson*, 73 Md.App. at 464–466, 534 A.2d at 1355–1356. The upshot was that Rule 775c, as eventually proposed by the Committee and adopted by this Court, effective 1 July 1977, 4 Md.Reg. 235 (16 Feb.1977), contained a final sentence virtually identical to the penultimate sentence of Rule 4–346(c): "The hearing is to be held whenever practicable by the sentencing judge." 4 Md.Reg. at 255.

This "legislative" history yields a clear result. The policy of having the sentencing judge preside at the revocation hearing is fundamental and is favored, although it is not absolute. Considerations of practicality come into play when, for some substantial reason, it is not feasible for the sentencing judge to appear at the revocation hearing. I am not persuaded that this important policy may be freely disregarded or applied in vastly different fashions in different parts of the State. The rule is a State-wide rule and clearly should be applied with reasonable uniformity throughout Maryland, subject to whatever minor variations may be required by the phrase "whenever practicable." Thus, I see no reason why a litigant should not be able to raise the improper application of the rule in a particular case. The situation is analogous to a litigant's ability to raise the improper application of Rule 4–271(a) (the 180–day

---

1. Proposed M.D.R. Rule 775 was of like tenor. 3 Md.Reg. 8, 36 (7 Jan.1976).

rule)—a rule that is intended in large part not to confer rights upon criminal defendants but to insure that the criminal justice system works in the public interest by processing cases with reasonable expedition. *See, e.g., State v. Brown,* 307 Md. 651, 657, 516 A.2d 965, 968 (1986); *State v. Frazier,* 298 Md. 422, 456–457, 470 A.2d 1269, 1287 (1984).

The question, therefore, becomes how the controlling provisions of Rule 4–346(c) are to be applied. This should be done in a way that recognizes the policy reflected in the rule, but contrary to the view of the Court of Special Appeals, I do not believe that policy mandates a case-by-case determination of what is "practicable." And contrary to the view of the majority, I do not think that determination should be relegated to the unreviewable discretion of administrative judges.

Among the definitions of "practicable" are "feasible" and "capable of being ... put into practice, with the available means." *The Random House Dictionary of the English Language* 1517 (unabridged 2d ed. 1987). And it might have been feasible for Judge Hammerman to make a telephone call to check into Judge Resnick's availability at the time of the revocation hearing. *See Peterson,* 73 Md.App. at 471–72, 534 A.2d at 1359. In one sense, it might have been feasible, had Judge Resnick been free at that time, for him to come from a District Court location in Baltimore City to the circuit court in the same city, in order to preside at the hearing. I note, as did the Court of Special Appeals, that Judge Resnick's earlier order of assignment to the circuit court included the authority to handle unfinished business such as that involved in this case. *Id.* at 470, 534 A.2d at 1358–59. But feasibility or practicability under the rule must be viewed from a perspective larger than that framed by the facts of this case.

Practicability must be considered in light of systemic considerations, including the need to move cases in the interests of both the parties and the public, and the need to

limit, to the extent we can, growing backlogs in our courts.[2] In short, frequent movement of judges from court to court in order to preside at probation revocation hearings is not always practicable because of the potentially adverse effects on dockets, parties in other cases, and court administration. On the other hand, Rule 4–346(c) is an important procedural statement, and its very terms demonstrate that mere trivial inconvenience should not be allowed to frustrate the policy in favor of the sentencing judge presiding at a revocation hearing. In construing and applying the rule, we must balance these conflicting concerns. For purposes of Rule 4–346(c), a per se rule as to practicability would best serve the policy of the rule and the sometimes competing interests of our judicial system, those who adjudicate within it, and those who litigate within it.

When the sentencing judge is a judge of the judicial circuit in which the sentencing was conducted, it is practicable for that judge to preside at the probation revocation hearing, unless the judge is no longer on the bench, or is unavailable for reasons such as protracted illness or disability.[3] As the majority notes, there is considerable intracircuit mobility of circuit court judges pursuant to Rule 1202 b. Since each circuit is administered by a circuit administrative judge, Rule 1200 c, it ordinarily is feasible to ar-

---

**2.** At the beginning of Fiscal 1988, for example, 228,079 cases were pending in the circuit courts. The figure had increased to 250,694 by the end of the fiscal year. *Annual Report of the Maryland Judiciary 1987–1988* 48.

**3.** In the discussion that follows, I assume that the sentencing judge is still an active judge (*i.e.*, that he or she has neither resigned, retired, nor died) as of the date of the revocation hearing. While certain former judges may be recalled to active service for temporary assignment pursuant to the provisions of Art. IV, § 3A of the Constitution and § 1–302 of the Courts and Judicial Proceedings Article, the administrative and fiscal problems involved render it per se impracticable to recall a former judge who imposed sentence to preside at a revocation of probation hearing.

I further assume that the sentencing judge is not, at the time of the revocation hearing, subject to a protracted illness or disability of a nature that would unduly delay the revocation hearing.

range intracircuit assignments for probation revocation hearings. This does not require the more complex administrative activity (and the possible, although not inevitable, longer travel) involved when intercircuit assignments are required or when judges must be moved from one court level to another, *i.e.*, District Court to circuit court.

Furthermore, the practicability requirement of the rule is satisfied when the sentencing judge was a visiting judge [4] temporarily assigned to the sentencing court, who, when the assignment of the revocation proceeding for hearing is made for a specific date, is once again scheduled to be sitting on that specific date in that same court for the purpose of hearing general matters. Under these circumstances the visiting judge is functionally indistinguishable from a resident judge of the sentencing court and is to be treated as though he were one, for Rule 4-346(c) purposes.

Finally, in my view, it is per se practicable under the rule for the sentencing judge to preside at the revocation hearing when the sentencing judge, although falling within neither of the categories mentioned above, at the time of sentencing notes on the record that he or she wishes to preside at any revocation hearing and, when contacted to preside on a specific date, reaffirms that wish and has the approval of that judge's administrative judge so to preside. Such a notation emphasizes the sentencing judge's special concern for the probationer and particular interest in the effectiveness of the probationary program. It indicates an ongoing desire to monitor probation and effectuate the probationary goals envisioned by the judge at the time of sentencing. When such a specific interest has been manifested and reaffirmed, the importance of the presence of the sentencing judge at the revocation hearing outweighs the administrative difficulty that may be involved, and the

---

**4.** By "visiting judge" I mean a judge from outside the circuit in which the sentencing court is located or one from a court level other than that of the sentencing court.

approval of the appropriate administrative judge further indicates the feasibility of this procedure.[5]

In all other cases, I would deem it per se impracticable to recall the sentencing judge to preside at the revocation hearing.

The procedure I visualize is designed to avoid substantial administrative disruption within the Maryland court system. At the same time, it supports the fundamental policy of Rule 4–346(c). In the many cases in which the sentencing judge is a judge of the court where the sentence involving probation is imposed, and resident in the county in which the sentencing occurs, that judge ordinarily will handle a revocation hearing. If the sentencing judge is out of his or her county of residence, but within his or her judicial circuit, the same result will occur, as it will when a visiting judge is back at the host court at the time of sentencing and when the sentencing judge indicates, on the record, that he or she wishes to return for a probation revocation hearing. Under these principles, it is likely that the sentencing judge will preside at a probation revocation in a substantial number of, if not most, cases, thus effectuating the policy of the rule Statewide.[6]

Judges COLE and McAULIFFE have authorized me to state that they concur with the views expressed herein.

---

5. Obviously, if the sentencing judge is no longer an active duty judge at the time of the revocation hearing, or is then disabled by a factor such as protracted illness, another judge may preside at the revocation hearing.

6. I am inclined to agree with the majority that a careful reading of Article 27, § 652, and a thoughtful analysis of its purpose will show that the statute and rule are not in conflict. *See* 315 Md. at 79 n. 2, 553 A.2d at 675 n. 2. If there is conflict, the rule, as the more recently promulgated, will prevail. *Hensley v. Bethesda Metal Co.,* 230 Md. 556, 561–562, 188 A.2d 290, 292–293 (1963); *see also County Fed. S. & L. v. Equitable S. & L.,* 261 Md. 246, 252–253, 274 A.2d 363, 367 (1971). Not before the Court in this case is the relationship between § 642 and § 643A(d), or the relationship between § 643A(d) and Rule 4–346(c)—regarding revocation of probation hearings in the District Court.