DECISION AND JUDGMENT ENTRY
{¶ 1} Robert W. Wyatt, Jr. appeals his convictions, sentences, and license suspensions. He first asserts that the Pike County Court of Common Pleas erred in making various evidentiary rulings. We disagree, because we find that the trial court did not abuse its discretion in overruling objections to: (1) evidence that Wyatt refused to submit to a test to determine his blood alcohol content; (2) opinion testimony by an expert; (3) testimony by a witness who violated a separation of witnesses order; and (4) the state impeaching its own witness with prior inconsistent statements. Wyatt also argues that the trial court erred in sentencing him. We disagree, because we find that the trial court's sentence is not unsupported by the record or contrary to law. We find, however, that the trial court did not impose consecutive prison sentences because it failed to do so in its judgment entry, even though it indicated at the sentencing hearing that it intended to sentence Wyatt to consecutive sentences. Next, Wyatt argues that the trial court erred in imposing consecutive license suspensions. Because we find that the trial court did not abuse its discretion in doing so, we disagree. Finally, Wyatt argues that his convictions are not supported by sufficient evidence. Because we find that when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} The Pike County Grand Jury indicted Wyatt on two counts of aggravated vehicular homicide, in violation of R.C. 2903.06(A); two counts of involuntary manslaughter, in violation of R.C. 2903.04(B); and four counts of aggravated vehicular assault, in violation of R.C.2903.08(A). All counts contained a specification that Wyatt was under the influence of alcohol or drugs of abuse while committing the offenses.
 {¶ 3} These charges arose from a two-car accident. Wyatt was driving a white Ford with two passengers inside. Eva Chapman was driving a green minivan with four passengers inside. The trial testimony indicated that Wyatt was speeding and passing cars when he struck Chapman's minivan. The minivan was attempting to cross a four-lane divided highway, had made it across one two-lane section, and was beginning to cross the second two-lane section when Wyatt's car struck it. Two passengers in the minivan, James Kinker and Jason Chapman, died. The remaining passengers and Wyatt's passengers were injured. According to testimony at the trial, Wyatt had been drinking alcohol before the accident.
 {¶ 4} The jury found Wyatt guilty of two counts of involuntary manslaughter and four counts of aggravated vehicular assault. On all counts, the jury found that Wyatt was not under the influence of alcohol at the time of the offense. The jury did not return verdicts on the remaining charges in the indictment.
 {¶ 5} At the sentencing hearing, Florence Kinker made a victim-impact statement and explained the serious psychological trauma her family has gone through because of the loss of her husband and grandson. Wyatt also spoke. He said that he was sorry that the Kinker family had lost people, but that he and his family had suffered too. He admitted to a problem with alcohol and explained that he has tried to get help for it but was unable to. He stated that he had remorse and that if his death would bring back the victims, that he "would do that."
 {¶ 6} The state presented Wyatt's driving record. The pre-sentence investigation report indicated that Wyatt repeatedly told the pre-sentence investigator that the accident was Chapman's fault, not his. The investigator determined that Wyatt did not show remorse for the offense.
 {¶ 7} At the conclusion of the sentencing hearing, the judge found that Wyatt is not amenable to Community Control and that prison is consistent with the purposes of R.C. 2929.11. The trial court noted that recidivism is likely because Wyatt was on probation at the time of the offense, had prior extensive misdemeanor convictions, spent time in jail, and caused serious physical harm to his victims. The trial court found that the shortest prison term would demean the seriousness of the offense and would not adequately protect the public. The trial court further found that Wyatt committed "the worst form of the offense" and poses a great likelihood of recidivism. The trial court sentenced Wyatt to four years in prison for each involuntary manslaughter conviction, to be served concurrently, and concurrent mandatory terms of seventeen months in prison on each of four aggravated vehicular assault convictions. The trial court stated that Wyatt would serve the involuntary manslaughter sentences and aggravated vehicular assault sentences consecutively.
 {¶ 8} The trial court's journal entry again sentenced Wyatt to four years in prison for each involuntary manslaughter conviction, to be served concurrently, and concurrent mandatory terms of seventeen months in prison on each of four aggravated vehicular assault convictions. The journal entry, however, did not indicate that the involuntary manslaughter sentences and the aggravated vehicular assault sentences were consecutive. Finally, the trial court suspended Wyatt's driver's license for three years on each count and ordered that the suspensions be served consecutively.
 {¶ 9} Wyatt moved for a new trial pursuant to Crim.R. 33, arguing that errors of law occurred at the trial and that the verdict was not sustained by sufficient evidence and was contrary to law. He also moved to dismiss the aggravated vehicular homicide counts of the indictment because the jury had failed to render a verdict. The trial court denied Wyatt's motion for a new trial, but dismissed the aggravated vehicular homicide counts of the indictment.
 {¶ 10} Wyatt appeals and asserts the following assignments of error:
 {¶ 11} "I. The trial court committed error when it permitted the State to introduce evidence that defendant, although not under arrest, requested the opportunity to speak with an attorney when requested to submit to a blood alcohol test by a State Highway Trooper.
 {¶ 12} "II. The trial court committed error when it permitted a State's expert witness to express an opinion as to the speed that defendant was operating his motor vehicle where such opinion was not based on facts or data perceived by the expert and when it was in part based on a report not testified to or admitted into evidence.
 {¶ 13} "III. The trial court committed error when it permitted a State's expert witness to express an opinion on the ultimate issue to be tried to the jury where the opinion was not based upon reliable information and there was no supporting rationale for the same.
 {¶ 14} "IV. The trial court committed error when it permitted the State to call a witness who had violated the separation of witnesses ruling of the court by remaining in the courtroom.
 {¶ 15} "V. The trial court committed error when it permitted the State to cross[-]examine one of its own witnesses and to introduce into evidence a written statement which the witness had signed without giving to the jury any limiting instructions on the same.
 {¶ 16} "VI. The trial court erred in the amount of time it imposed in sentencing the defendant for convictions for involuntary manslaughter and aggravated vehicular assault and in making said sentences consecutive.
 {¶ 17} "VII. The trial court erred in imposing six consecutive license suspensions on the defendant for his involvement in a single motor vehicle accident.
 {¶ 18} "VIII.The conviction of the defendant for the offenses of involuntary manslaughter and aggravated vehicular assault are not supported by sufficient evidence."
 II. {¶ 19} In his first assignment of error, Wyatt argues that the trial court erred by overruling his objection to testimony that he requested an attorney when a Trooper asked him to submit to a Blood Alcohol Content (BAC) test.[1] Wyatt argues that because the state did not follow proper procedures for administering the test, the fact that he refused it should be inadmissible.
 {¶ 20} Relevant evidence is admissible unless an Ohio statute, the Ohio or United States Constitution, or a Court Rule establishes an exception. Evid.R. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be disturbed absent an abuse of that discretion. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of syllabus; State v. Reed (1996),110 Ohio App.3d 749, 752. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin
(1993), 67 Ohio St.3d 487; Rock v. Cabral (1993), 67 Ohio St.3d 108. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe I (1991), 57 Ohio St.3d 135, citing Berk v. Matthews (1990),53 Ohio St.3d 161.
 {¶ 21} Wyatt argues that R.C. 4511.191(C)(1) operates to exclude a defendant's refusal to take a BAC test if the test is requested more than two hours after the alleged violation. We agree that generally the state's failure to administer a BAC test within the statutory time frame may affect the admissibility of the test results. See, e.g., Newark v.Lewis (1988), 40 Ohio St.3d 100, paragraph one of the syllabus. But see,Lewis, at paragraph two of the syllabus (a properly administered bodily substances test given outside the statutory time frame may be admitted into evidence with appropriate expert testimony.) However, the issue here is not whether the results of a test are admissible. Rather, because Wyatt refused to take the test, the issue is whether Wyatt's refusal to take the test more than two hours after the alleged violation is admissible.
 {¶ 22} R.C. 4511.191(C)(1) requires that any person under arrest for operating a motor vehicle under the influence of alcohol be advised of specific consequences of refusing to submit to a test to determine the BAC and specific consequences of submitting to the test. However, neither R.C. 4511.191 nor the administrative rules promulgated under its authority "address the outer time limit for giving the test." Cline v.Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93, 98. "By refusing to submit to [a BAC test] contingent upon receiving advice of counsel, the arrestee has, for purposes of the implied consent statute, R.C. 4511.191, `refused' to take the chemical alcohol test." Dobbins v. Ohio Bur. ofMotor Vehicles (1996), 75 Ohio St.3d 533, paragraph two of the syllabus.
 {¶ 23} We find that Wyatt has failed to point to any statute, constitutional provision, or court rule that renders the relevant evidence, i.e., his refusal to take the BAC test, inadmissible. Accordingly, we find that the trial court did not abuse its discretion in overruling Wyatt's objection. We overrule his first assignment of error.
 III. {¶ 24} In his second and third assignments of error, Wyatt argues that the trial court erred in overruling his objections to Trooper Mosley's opinion testimony because: (1) Mosley based his opinion both on his own observations and upon a crash report prepared by Trooper Davis, who did not testify about the contents of the report; and (2) Mosley improperly testified to the ultimate issue of the case because his opinion was a bare conclusion lacking in supporting rationale.
 A. {¶ 25} We first address Wyatt's argument that the trial court erred by allowing Trooper Mosley to opine that Wyatt's vehicle was traveling at eighty-one miles per hour before the accident because the opinion was partially based upon a report prepared by Trooper Davis, which was not admitted into evidence at the hearing.
 {¶ 26} Evid.R. 703 sets forth the requirements for an expert witness to give opinion testimony. It provides:
 {¶ 27} "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."
 {¶ 28} Admission or exclusion of expert testimony is generally a matter committed to the sound discretion of the trial court. Sage, 31 Ohio St.3d at paragraph two of the syllabus. The trial court's discretion, however, must be guided by the standards of Evid.R. 703, which governs what an expert may rely on in rendering an opinion. See e.g., State v. Volgares (May 17, 1999), Lawrence App. No. 98CA6. "Where an expert bases his opinion, in whole or in major part, on facts or data perceived by [the expert], the requirement of Evid.R. 703 has been satisfied." State v. Solomon (1991), 59 Ohio St.3d 124, syllabus.
 {¶ 29} Here, Mosley based his opinion on his own observations of the place where the accident took place; the pictures of the vehicles after the crash, which were admitted into evidence; and the information from the crash report, some of which he personally verified. Thus, we cannot say that the trial court acted in an unreasonable, unconscionable, or arbitrary manner in determining that Mosley's opinion was based in major part on facts or data he perceived. Accordingly, we find that the trial court did not abuse its discretion in allowing Mosley to opine as to the speed that Wyatt's vehicle was traveling before the accident and overrule Wyatt's second assignment of error.
 B. {¶ 30} Next, we address Wyatt's argument that the trial court erred in overruling his objection to Mosley's testimony that the accident would not have occurred if Wyatt had been operating his vehicle at the posted speed limit.
 {¶ 31} Evid.R. 704 provides for opinion testimony on the ultimate issue to be decided by the trier of fact. It provides:
 {¶ 32} "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."
 {¶ 33} We review such decisions by the trial court for an abuse of discretion. See e.g., In re Spears (Oct. 23, 1996), Athens App. No. 96CA1718.
 {¶ 34} Wyatt argues that Mosley improperly testified to the ultimate issue of the case because his opinion was a bare conclusion lacking in supporting rationale. Because we have found that Mosley based his opinion on his own observations of the place where the accident took place, the pictures of the vehicles after the crash, which were admitted into evidence, and the information from the crash report, some of which he personally verified; and because Mosley's opinion concerned the cause of the crash and does not go to the ultimate issue of Wyatt's guilt or innocence, we find that the trial court did not act in an unreasonable, unconscionable, or arbitrary manner. Accordingly, we find that the trial court did not abuse its discretion in allowing Mosley's opinion, and we overrule Wyatt's third assignment of error.
 IV. {¶ 35} In his fourth assignment of error, Wyatt argues that the trial court erred by overruling his objection when the state called Shannon Jenkins as a witness because Jenkins violated the trial court's order of separation of witnesses.[2] Wyatt alleges that because the state failed to show that Jenkins' testimony was essential, it abused its discretion.
 {¶ 36} Evid. R. 615 provides for the separation of witnesses during the trial so that the witnesses cannot hear the trial testimony prior to testifying. It provides:
 {¶ 37} "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize the exclusion of any of the following:
 {¶ 38} "* * *
 {¶ 39} "(C) a person whose presence is shown by a party to be essential to the presentation of the party's cause;
 {¶ 40} "* * *"
 {¶ 41} Issues surrounding the separation of witnesses and exclusion of witnesses are within the sound discretion of the trial court. State v. Smith (1990), 49 Ohio St.3d 137, 142 ("Exclusion of witnesses is ordinarily a decision within the sound discretion of the trial court."); Oakwood v. Makar (1983), 11 Ohio App.3d 46, 48
(separation of witnesses is within sound discretion of the trial court);State v. Rogers (Nov. 15, 2000), Scioto App. Nos. 98CA2620 and 98CA2625 (court's decision on enforcing separation of witnesses order within its sound discretion).
 {¶ 42} Wyatt's assertion that once Jenkins violated the separation of witnesses order, the state was required to show that his testimony was necessary before it could call him as a witness, is misguided. Although the rule expressly prohibits "exclusion" of "a person whose presence is shown by a party to be essential to the presentation of the party's case[,]" the exclusion to which the rule refers to is persons who are excluded from obeying the separation of witnesses order, not those who must be excluded once he or she violates the order. The remedy for violation of a separation of witnesses order is left to the sound discretion of the trial court. Rogers.
 {¶ 43} Here, we cannot find that the trial court acted in an unreasonable, unconscionable, or arbitrary manner in allowing Jenkins to testify. The trial court instructed the jury that Jenkins failed to obey its separation of witnesses order. During the presentation of Wyatt's case, the trial court allowed Wyatt to present the testimony of a witness who had also violated the separation of witnesses order. Accordingly, we find that the trial court did not abuse its discretion in permitting Jenkins to testify and overrule his fourth assignment of error.
 V. {¶ 44} In his fifth assignment of error, Wyatt alleges that the trial court erred by overruling his objection to the state impeaching Jenkins with his statement to Ohio State Highway Patrol Trooper Fraley.[3] Wyatt argues that the state should not have been permitted to impeach Jenkins with the statement because it failed to show the surprise or affirmative damage required by Evid.R. 607 when a party attacks its own witness's credibility with a prior inconsistent statement.
 {¶ 45} Evid.R. 607 limits impeachment of a party's own witness with a prior inconsistent statement. It provides:
 {¶ 46} "(A) The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * *"
 {¶ 47} The existence of "surprise" concerning prior inconsistent statements is a decision within the sound discretion of the trial court.State v. Diehl (1981) 67 Ohio St.2d 389, 391; State v. Reed (1981)85 Ohio St.2d 117. Surprise exists if the witness's trial testimony is "materially inconsistent" with a prior statement, and counsel lacked an "express forewarning" from the witness of his or her intent to recant or repudiate the prior statement. State v. Wisebaker (Aug. 8, 1996), Pike App. No. 96CA567, citing Reed at 125; State v. Blair (1986)34 Ohio App.3d 6. If the party attempts to speak to the witness who has made a statement and the witness refuses to cooperate and does not expressly forewarn the party of an intent to repudiate the prior statement, when the witness repudiates the statement on the stand, a trial court's finding of surprise is substantiated. Wisebaker, citingReed.
 {¶ 48} If a witness's testimony that is inconsistent with the prior statements contradicts, denies, or harms the party's trial position, there is affirmative damage for purposes of Evid.R. 607.Wisebaker, citing State v. Stearns (1982), 7 Ohio App.3d 11, 15.
 {¶ 49} Jenkins signed a written statement witnessed by Trooper Fraley that included the assertion that Wyatt had consumed a couple of beers before the accident, including one in the car before the accident, and that they were going fast and passing cars just before the accident. At trial, Jenkins testified that Wyatt did not consume any beer in the car and disputed the accuracy of his prior statement.
 {¶ 50} We find that the trial court did not abuse its discretion in finding that the state was surprised by and suffered affirmative damage from Jenkins' testimony. The state did not have a chance to question him about his statement to Trooper Fraley,[4] thus the state could not have been forewarned about Jenkins' intention to deviate from his prior statement to Trooper Fraley. Jenkins' testimony at trial contradicted the state's trial position that Wyatt was under the influence at the time of the accident, specifically that he had been drinking in the car just before the accident. Accordingly, we find that the trial court did not abuse its discretion in permitting the state to impeach Jenkins with his prior inconsistent statement, and overrule Wyatt's fifth assignment of error.
 VI. {¶ 51} In his sixth assignment of error, Wyatt argues that the trial court erred in imposing his prison sentence. He first asserts that the trial court erred in finding that the shortest prison term would demean the seriousness of his conduct because the record does not support this finding. Second, Wyatt argues that the two four-year concurrent terms imposed for his convictions for involuntary manslaughter are excessive. He relies on the amendments to the involuntary manslaughter statute that reduced an involuntary manslaughter conviction based upon a minor misdemeanor, such as speeding, from a felony to a misdemeanor. Third, Wyatt argues that the sentences the trial court imposed upon him for the aggravated vehicular assault convictions are excessive. He asserts that the jury implicitly found that he did not act recklessly when he caused the accident because it did not convict him of the aggravated vehicular homicide charge. Fourth, Wyatt argues that the trial court did not comply with R.C. 2929.19(B)(2)(c) when it imposed consecutive terms because it failed to articulate its reasons for doing so.
 {¶ 52} An offender may appeal as a matter of right a sentence that is contrary to law. R.C. 2953.08(A)(4). If a trial court fails to make the findings required by law in order to impose a sentence, the sentence is contrary to law. State v. Jones (2001), 93 Ohio St.3d 391, 399. We must not reverse a felony sentence unless we find, by clear and convincing evidence, that the sentence is unsupported by the record, or contrary to law. R.C. 2953.08(G)(1)(a) and (d).
 A. {¶ 53} We first consider Wyatt's argument that the trial court erroneously imposed more than the minimum sentence upon him because he is a first time felony offender. "Minimum sentences are favored for first-time imprisonment." State v. Edmonson (1999), 86 Ohio St.3d 324,325. "R.C. 2929.14(B) requires a trial court to impose a minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender."Id. See, also, Jones, 93 Ohio St.3d at 398. The trial court is not required to "give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." Edmonson,86 Ohio St.3d at 326 (emphasis in original). The Supreme Court determined in Edmonson that "the verb `finds' as used in [R.C. 2929.14(B)] means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Edmonson,86 Ohio St.3d at 326.
 {¶ 54} Here, the trial court found that the minimum sentence would demean the seriousness of Wyatt's offense. The trial court was not required to articulate its reasons. Edmonson. While Wyatt is correct in arguing that speeding is only a minor misdemeanor, Wyatt's sentence is based upon his conviction for involuntary manslaughter. Wyatt's actions caused a very serious accident that cost two people their lives and seriously injured at least four others. We cannot find by clear and convincing evidence that the trial court's finding is unsupported by the record. Therefore, the trial court did not err in imposing more than the minimum sentence upon Wyatt as a first time felony offender.
 B. {¶ 55} We next consider Wyatt's argument that the two four-year concurrent terms imposed for his convictions for involuntary manslaughter are excessive. He relies on the amendments to the involuntary manslaughter statute that reduced an involuntary manslaughter conviction based upon a minor misdemeanor, such as speeding, from a felony to a misdemeanor. See Am.Sub.S.B. No. 107 of the 123rd General Assembly (effective 3-23-2000). Because we must not reverse a felony sentence unless we find, by clear and convincing evidence, that the sentence is unsupported by the record, or contrary to law, R.C. 2953.08(G)(1)(a) and (d), we find that the amendments to the statute upon which Wyatt's convictions and sentences are based irrelevant to our review because they occurred after the offenses.
 C. {¶ 56} We next consider Wyatt's argument that his aggravated vehicular assault convictions are excessive. He asserts that the jury implicitly found that he did not act recklessly when he caused the accident because it did not convict him of the aggravated vehicular homicide charge. While Wyatt is correct that the jury found his conduct to be reckless in convicting him of aggravated vehicular assault and implicitly found him not to be reckless in his conduct in failing to convict him of the aggravated vehicular homicide, this perceived inconsistency is not one that we may review. Again, our review is limited to whether the sentence is unsupported by the record, or contrary to law, R.C. 2953.08(G)(1)(a) and (d), and Wyatt does not allege that this perceived inconsistency in sentencing is contrary to law.
 D. {¶ 57} We finally consider Wyatt's argument that the trial court erred in imposing consecutive sentences. First, we note that the trial court did not impose consecutive sentences in its judgment entry. A court speaks only through its journal.[5] We find that we need not decide this issue, "because the judgment entry does not state that the sentence is consecutive, and a court speaks only through its journal." State v.Steen (June 28, 1994), Vinton App. No. 93CA490 (finding that sentences were not consecutive even though trial court announced at sentencing hearing that sentences were to be consecutive, because journal entry did not impose consecutive sentences), citing In re Adoption of Gibson
(1986), 23 Ohio St.3d 170, 173 at fn. 3. See also, Schenley v. Kauth
(1953) 160 Ohio St. 109, paragraph one of the syllabus (a court speaks only through its journal). Thus, we find that the trial court did not impose consecutive sentences and, therefore, need not consider Wyatt's argument.
 VII. {¶ 58} In his seventh assignment of error, Wyatt argues that the trial court erred in imposing six consecutive license suspensions because all of his convictions arose from a single auto accident. The trial court imposed a three-year license suspension for each of Wyatt's six convictions and ordered that the suspensions run consecutively.
 {¶ 59} R.C. 4507.16(A)(1)(b) requires suspension of a driver's license when the driver is convicted of a felony that involved the use of a motor vehicle. The trial court has the discretion to order the suspensions authorized by R.C. 4507.06(A)(1)(b) to run consecutive to each other even if the suspensions arise from a single traffic accident.State v. Mahoney (1986), 34 Ohio App.3d 114. Because R.C. 4507.16 does not provide the trial court with guidelines or requirements in the exercise of its discretion, we review the trial court's decision for a simple abuse of discretion. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. State v.Lessin (1993), 67 Ohio St.3d 487; Rock v. Cabral (1993), 67 Ohio St.3d 108. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe I (1991), 57 Ohio St.3d 135, citing Berk v. Matthews (1990),53 Ohio St.3d 161.
 {¶ 60} Here, Wyatt argues that the trial court erred because it suspended his license for eighteen years for offenses which involved a minor misdemeanor, speeding. We cannot find that the trial court acted in an unreasonable, unconscionable, or arbitrary manner in imposing consecutive license suspensions for each of Wyatt's victims. While he is correct that the underlying offense here is a minor misdemeanor, that offense ultimately resulted in the death of two people and serious injury to four others. Given the magnitude of the harm caused to Wyatt's victims, we find that the trial court did not abuse its discretion in imposing consecutive license suspensions totaling eighteen years. Accordingly, we overrule Wyatt's seventh assignment of error.
 VIII. {¶ 61} In his eighth and final assignment of error, Wyatt argues that sufficient evidence does not support his convictions. He argues that once the testimony he objected to in the previous assignments of error is disregarded, there is not enough evidence to support his convictions.
 {¶ 62} When we review the sufficiency of the evidence, we must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia
(1979), 443 U.S. 307.
 A. {¶ 63} We first consider Wyatt's involuntary manslaughter convictions. R.C. 2903.04(B) provides:
 {¶ 64} "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third or fourth degree or a minor misdemeanor."
 {¶ 65} After a thorough review of the record, we find that when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of involuntary manslaughter proven beyond a reasonable doubt. It is undisputed that James Kinker and Jason Chapman died because of the accident. James Jason Fields testified that he was volunteering as EMS medical personnel on the day of the accident. He explained that Wyatt told him that he was the driver of the white Ford.
 {¶ 66} Mosley opined that Wyatt was driving his white Ford above the posted speed limit at eighty-one miles per hour before he began braking to avoid Chapman's vehicle. Speeding is a minor misdemeanor. R.C. 4511.21; R.C. 4511.99. Eva Chapman testified that she looked for cars before she began to cross the final two lanes of the divided highway but did not see the white vehicle until it was too late to avoid the accident. A witness to the crash testified that Wyatt's vehicle was traveling fast before the accident. Another witness testified his vehicle was traveling sixty miles per hour and that a white car passed him shortly before the accident. The woman who was driving behind Eva Chapman's vehicle and was looking both ways in an attempt to also cross the divided highway testified that she did not see the white car until it hit Chapman's vehicle. Mosley also opined that had Wyatt been driving at the posted speed limit, "the crash would not have occurred." Thus, we find that sufficient evidence supports Wyatt's conviction for involuntary manslaughter.
 B. {¶ 67} Next, we consider Wyatt's aggravated vehicular assault convictions. R.C. 2903.08(A) provides:
 {¶ 68} "No person, while operating * * * a motor vehicle * * * shall recklessly cause serious physical harm to another person * * *."
 {¶ 69} After a thorough review of the record, we find that when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of aggravated vehicular assault proven beyond a reasonable doubt. James Jason Fields testified that Wyatt told him that he was the driver of the white Ford. Eva Chapman testified that she suffered a broken wrist and massive bruising because of the accident. Florence Kinker testified that the accident caused her to suffer a fractured pelvis, gashes and cuts to her head, and a lacerated elbow. She remained in a wheelchair for several weeks and required physical therapy. Evan Chapman testified that he suffered a broken arm and a severe bruise on his hip because of the accident. He spent two to three days in the hospital. James Jason Fields testified that he assisted in the treatment of Brian Remy. According to Fields, Remy was transported by helicopter to Ohio State University Trauma Centers. Viewing this evidence and the testimony summarized in our discussion of Wyatt's conviction for involuntary manslaughter in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Wyatt acted recklessly in causing the victims' serious bodily harm. Thus, we find that sufficient evidence supports Wyatt's convictions for aggravated vehicular assault.
 C. {¶ 70} Having found sufficient evidence to support all of Wyatt's convictions, we overrule his eighth assignment of error.
 IX. {¶ 71} In sum, we overrule all of Wyatt's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 {¶ 72} Evans, J., Concurring:
 {¶ 73} I write separately to comment on four assignments of error: the Second Assignment of Error, in which I concur in judgment only; the Third Assignment of Error, in which I concur in judgment and opinion; and the Sixth and Eighth Assignments of Error, in which I concur in judgment only.
Second Assignment of Error
 {¶ 74} I agree that it was error for the expert to testify to the precise speed at which appellant was traveling at the point of impact because this testimony appears to be derived from a report that was not made part of the record. However, I am unable to see how this error has prejudiced appellant because the expert clearly had enough information on which to base his opinion concluding that appellant was in fact speeding.
 {¶ 75} The expert testified that he formulated his opinion based in part on pictures from his own visitation to the scene of the accident, as well as from other photographs of the accident scene. Further, the expert certainly could have considered the testimony in the record of eyewitnesses who witnessed appellant in fact speeding.
 {¶ 76} From this evidence, the expert certainly could have concluded that appellant was speeding, but perhaps could not have determined the precise speed at which appellant was traveling. Thus, I fail to see how any error derived from this testimony has prejudiced appellant.
 {¶ 77} Accordingly, I concur in the judgment only of the majority's analysis of appellant's Second Assignment of Error.
Third Assignment of Error
 {¶ 78} Because I would find that the expert's testimony was harmless error and that his conclusion that appellant was speeding was supported by other evidence in the record, I would overrule appellant's argument that the expert's opinion was a bare conclusion without supporting rationale.
 {¶ 79} Accordingly, I concur in the judgment and opinion of the majority's analysis of appellant's Third Assignment of Error.
Sixth and Eighth Assignments of Error
 {¶ 80} Aggravated Vehicular Assault and Aggravated Vehicular Homicide both require a demonstration of recklessness. The chief difference between the two crimes is that the recklessness in the former results in physical injury, while the recklessness in the latter results in death.
 {¶ 81} Here, the behavior of appellant — drinking alcohol and then speeding and passing cars — resulted in the death of two victims and the injury of four. However, the jury somehow found that appellant's behavior was reckless only in regard to those who were injured, and not to those who were killed.
 {¶ 82} How a defendant who causes the injury and death of multiple victims arising out of a single incident may be reckless toward some, while not toward others, is puzzling. Nevertheless, additional analysis of these positions would clearly invade the province of the jury. Thus, I am compelled to concur in judgment only concerning appellant's Sixth and Eighth Assignments of Error.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, J.: Concurs in Judgment and Opinion as to Assignments of Error I, III, IV, V, VII; and Concurs in Judgment Only as to Assignments of Error II, VI, and VIII with Concurring Opinion.
Harsha, J.: Concurs in Judgment and Opinion as to Assignments of Error V, VII, and VIII; Concurs in Judgment Only as to Assignments of Error I, IV, VI, and Dissents as to Assignments of Error II and III.
[1] In a single sentence within his argument regarding this assignment, Wyatt states that the "jury instructions" were "error." We do not consider this assertion because Wyatt failed to separately assign and argue it, failed to identify in the record the error on which the assertion is based, and failed to cite any legal authority in support. See App.R. 12 (A)(2).
[2] In his argument, Wyatt implies that the trial court should not have allowed the State to treat Jenkins as a hostile witness. We do not consider this assertion because Wyatt failed to separately assign and argue it, failed to identify in the record the error on which the assertion is based, and failed to cite any legal authority in support. See App.R. 12 (A)(2),
[3] Wyatt asserts in his assignment of error that the trial court erred in admitting Jenkins' prior statement to Trooper Fraley into evidence. We do not consider this assertion because Wyatt did not provide any argument in support of his assertion, including citation to legal authority, in support. See App.R. 12.
[4] Parts of the bench conferences during the trial were transcribed as "inaudible." Because both parties assert in their briefs that the state tried to contact Jenkins to discuss his testimony but could not reach him, we accept this assertion even though it does not appear in the record and no attempt was made to add it to the record in compliance with App.R. 9.
[5] We note that we have previously looked to the transcript of sentencing hearings for findings or reasons supporting a trial court's sentence. See, e.g., State v. Borders (Aug. 7, 2000), Scioto App. No. 00CA2696. However, we will not look to a transcript for the sentence itself. Steen.